**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**CHERYL WEIMAR,**

    **Plaintiffs,**

v.                                        **CASE NO.: 5:19-cv-548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF**
**CORRECTIONS, KEITH TURNER,**
**and RYAN DIONNE,**

    **Defendants.**
_____/

## SECOND AMENDED COMPLAINT

Plaintiff, Cheryl Weimar ("Weimar"), by and through the undersigned counsel, hereby sues the Florida Department of Corrections ("FDC"), Keith Turner ("Turner") and Ryan Dionne ("Dionne"),[1] and allege as follows:

### INTRODUCTION

1. This is an civil rights action for monetary damages as a result of the Defendants' violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and the Rehabilitation Act of 1973,

---

[1] The John Doe Defendants have been removed from this amendment. However, Plaintiff anticipates adding additional defendants at a later date when their identities become known through further investigation and discovery in this matter.

29 U.S.C. § 701, *et seq.* (the "RA"). Plaintiff Weimar is an FDC inmate who had a history of physical, mental, and intellectual disabilities. When she declared an inmate psychological and medical emergency on August 21, 2019, Plaintiff Weimar was brutally attacked—and nearly beaten to death—by Defendants Turner and Dionne instead of being provided the necessary medical attention and accommodation for her known disabilities. Defenseless, Plaintiff Weimar suffered serious and life-threatening injuries, including a broken neck, at the hands of the Defendants. She is now a quadriplegic because of the Defendants' excessive use of force, in violation of the Eighth Amendment, the ADA, and the RA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

3. Venue is proper in the Ocala Division in the Middle District of Florida because Plaintiff currently resides in Ocala, Florida.

4. The claims alleged herein are brought within the applicable statute of limitations.

5. Plaintiff alleges that administrative remedies were and are unavailable to her and, therefore, she is not subject to the Prison Litigation Reform Act's

("PLRA") exhaustion requirement. Plaintiff is bedridden and a quadriplegic due to the injuries sustained by the Defendants.

## THE PARTIES

6. Plaintiff Weimar brings this action for violation of the Eighth Amendment, the ADA, and the RA. At the time of the unlawful beating alleged herein, Plaintiff was housed at Lowell Correctional Institution ("Lowell CI"). Plaintiff is currently housed at Florida Women's Reception Center ("FWRC"), which is across the street, and less than one mile, from Lowell CI in Ocala, Florida.

7. Defendant FDC is an agency of the State of Florida that owns and operates correctional facilities in the state, and which receives federal funds to operate its agency. Defendant FDC is headquartered in Leon County, Florida, and therefore venue is proper in Tallahassee, Florida. At all times relevant hereto, Defendant FDC owned and operated Lowell CI, the facility where Plaintiff was brutally attacked by Defendants Turner and Dionne, who inflicted life-threatening injuries, including a broken neck, to a defenseless Plaintiff.

8. Defendant Turner is a correctional officer employed by Defendant FDC, who, at the time of the incident alleged herein, worked at Lowell CI. Defendant Turner acted under color of state law and intentionally deprived Plaintiff of her rights under the United States Constitution. Defendant Turner is sued in his individual capacity.

3

9. Defendant Dionne is a correctional officer employed by Defendant FDC, who, at the time of the incident alleged herein, worked at Lowell CI. Defendant Dionne acted under color of state law and intentionally deprived Plaintiff of her rights under the United States Constitution. Defendant Dionne is sued in his individual capacity.

## FACTS

10. Plaintiff is an inmate incarcerated in Defendant Florida Department of Corrections' prison system. The injuries sustained by the Plaintiff occurred at Lowell CI, in Ocala, Florida. Plaintiff currently resides in Ocala, Florida, where she continues to suffer damages under her ADA and RA claims.

11. Plaintiff has been incarcerated since January 21, 2016. Her current release date is February 9, 2021.

12. Plaintiff has a history of a physical disability relating to an injured hip.

13. Plaintiff also has a history of mental disabilities, including bipolar disorder and severe anxiety disorder, as well as other, non-specified intellectual and learning disabilities.

14. Defendant FDC had actual knowledge of Plaintiff's physical, mental, and intellectual disabilities from the time her incarceration began and at all times relevant hereto.

## **Defendants Turner and Dionne Should Have Never Had the Opportunity to Brutally Attack and Use Excessive Force on Plaintiff**

15. Defendant FDC had notice that—based on Defendant Turner's violent, threatening, and abusive conduct towards women based on dozens of inmate complaints against him—Defendant Turner posed a risk to female inmates at Lowell CI, including Plaintiff.

16. Defendant Dionne has a criminal history indicating violence against women. Defendant Dionne was arrested in 2013 for "beating" his then girlfriend. His beating included hitting his former girlfriend, as well as biting her neck and head area. Defendant Dionne's criminal history should have disqualified him from working for Defendant FDC at Lowell CI where he would be responsible for the care and supervision of thousands of female inmates. Defendant Dionne has a conscious disregard for the health and safety of the female inmates, including Plaintiff, that he has a duty to guard and protect as a correctional officer.

## **The Brutal Attack on Cheryl Weimar**

17. The incident and brutal attack took place on August 21, 2019, while Plaintiff was on prison work duty.

18. Among other duties, Plaintiff's work assignment on August 21, 2019, was to clean the toilets in one or more of the confinement areas at Lowell CI, including the Lowell CI work camp.

19. However, Plaintiff had a pre-existing hip condition, which substantially affected her ability to bend down and clean the toilets. She complained to Defendants Turner and Dionne that she was in pain and she was unable to clean the toilets because of her hip condition and requested that she be reassigned to a different, less physically demanding task that she was able to perform without causing substantial pain in her hip.

20. Plaintiff's hip condition is a physical impairment, which substantially affected one of more major life activities, including but not limited to, her ability to perform manual tasks, walk, stand, sit, reach, lift, bend, and work.

21. The Defendants were aware of Plaintiff's physical impairment and pre-existing hip condition. The Defendants were also aware of Plaintiff's mental and intellectual disabilities. Indeed, this is why Plaintiff was assigned to clean toilets in the work camp, because she was unable to be in a "real work crew."

22. Plaintiff requested a reasonable accommodation for her physical disability in connection with her prison work assignment. That is, her request to be reassigned away from cleaning toilets on August 21, 2019, because performing such task caused her substantial pain, was a reasonable request for an accommodation.

23. The Defendants denied Plaintiff's reasonable request for an accommodation relating to her physical disability and hip condition.

24. Rather than provide a reasonable accommodation, Defendants Turner and Dionne became angry at complaints and Plaintiff's reasonable request for an accommodation. As a result, Plaintiff declared an inmate medical emergency, hoping that she would receive medical attention for the pain she was experiencing because of her hip condition.

25. When Plaintiff declared an inmate medical emergency, Defendants Turner and Dionne became even angrier. A confrontation ensued.

26. The more Plaintiff complained of her physical condition, the more angry, aggressive, and violent Defendants Turner and Dionne became.

27. Under FDC policy and procedure, prison officials should have immediately called medical personnel to intervene once Plaintiff declared an inmate medical emergency. Defendants Turner and Dionne did not follow procedure.

28. The stress of the confrontation caused Plaintiff to experience an adverse psychological episode as Defendants Turner and Dionne aggressively approached her and became violent. With a bad hip and nothing more than cleaning supplies, Plaintiff was defenseless.

29. As the confrontation escalated, Plaintiff began to declare an inmate psychological emergency, her second request for accommodations. The need for this accommodation through Plaintiff's declaration of an inmate psychological

7

emergency flowed from the aggressive confrontation brought on by Defendants Turner and Dionne.

30. Under FDC policy and procedure, prison officials should have immediately called medical personnel to intervene once Plaintiff declared an inmate psychological emergency. Further, under FDC policy, Plaintiff should have immediately been taken to the medical unit for a consultation with a mental health professional.

31. For the second time, Defendants Turner and Dionne failed or otherwise refused to follow procedure.

32. Instead, Defendants Turner and Dionne slammed Plaintiff to the ground. While down, they brutally beat her with blows to her head, neck, and back. Plaintiff was elbowed and kneed in the back of her neck by at least one of her attackers, causing her to suffer a broken neck.

33. Defendants Turner and Dionne did not stop there. They dragged Plaintiff like a rag doll across the compound, allowing her head to bounce along the ground along the way.

34. Further, Defendants Turner and Dionne dragged Plaintiff outside the compound so they could continue their brutal attack in an area that was not covered by surveillance cameras. After Defendants Turner and Dionne struck Plaintiff in the

neck with the back of their knees, Plaintiff continued to lay soundless and motionless as she absorbed the unlawful beating at the hands of her attackers.

35.  Plaintiff was handcuffed from behind during this beating.

36.  Plaintiff's head bobbled around on the ground during the beating with her eyes rolled into the back of her head, causing witnesses to believe that Defendants Turner and Dionne were beating an already dead woman.

37.  When inmates sought help for Plaintiff from Lowell CI employees and security staff, the staff told inmates, "I'm not getting involved." Lowell CI security staff ordered inmates who were watching the beating inside so that they would no longer be able to witness the continued beating outside.

38.  Immediately after the beating, FDC employees stated "she was already disabled, they just disabled her more." Either Defendant Turner or Defendant Dionne stated that he "beat [Plaintiff] stupid because she couldn't clean a toilet."

39.  This malicious and sadistic beating of the defenseless Plaintiff by Defendants Turner and Dionne caused Plaintiff to suffer life-threatening and permanent injuries, including a broken neck. She is now a quadriplegic and has lost the ability to use her arms and legs.

40.  Plaintiff was hospitalized after the brutal attack. She initially had to breathe through a tracheostomy tube, and only recently became able to breathe without one. Plaintiff is currently receiving food through a PEG tube, and will

remain hospitalized for the foreseeable future. As a result of this unlawful beating and inmate abuse, Plaintiff will require around-the-clock medical care for the rest of her life.

41. Until recently, Plaintiff was being treated at Memorial Hospital in Jacksonville, Florida, by medical providers in contract with FDC. She has since been transferred back to FWRC, an FDC prison across the street from Lowell CI, where she is confined to a hospital bed in the prison's infirmary.

### FDC ADA Coordinator

42. The FDC ADA Coordinator's job duties includes evaluating inmates with disabilities, seeking outside consultations to determine whether inmates have disabilities, and providing accommodations. All ADA requests for accommodations are supposed to be sent to and reviewed by the FDC ADA Coordinator in Tallahassee, Florida. The ADA Coordinator's job is to track all accommodations for inmates, including those that should have been provided to Plaintiff. Indeed, FDC's ADA Coordinator maintains a "confidential ADA file" related to accommodation requests. From this file, accommodation requests are reviewed and transmitted to the inmate's medical records at the appropriate prison facility.

43. This process is conducted from Tallahassee, Florida, and should have been conducted from Tallahassee, Florida, for Plaintiff.

## COUNT I
## 42 U.S.C. § 1983 – EIGHTH AMENDMENT
### (*Against Defendants Turner and Dionne*)

44. Plaintiff incorporates and re-alleges Paragraphs 1 through 43 as if fully set forth herein.

45. This Count is brought through 42 U.S.C. § 1983 and against Defendants Turner and Dionne for violation of the Eighth Amendment's prohibition of cruel and unusual punishment on prisoners.

46. At all times relevant hereto, Defendants Turner and Dionne acted under color of state law and intentionally deprived Plaintiff of her rights under the United States Constitution. Defendants Turner and Dionne are sued in their individual capacities.

47. While working in at Lowell CI, a correctional facility owned and operated by Defendant FDC, Defendants Turner and Dionne intentionally violated Plaintiff's right as a prisoner to be free from cruel and unusual punishment and to be free from the use of excessive force and to receive appropriate medical care while being detained as a prisoner.

48. Plaintiff had known physical, mental, and intellectual impairments, which were serious medical needs and conditions. Defendants Turner and Dionne were subjectively aware of Plaintiff's physical, mental, and intellectual impairments and conditions. Further, Plaintiff's conditions and serious medical needs were so

obvious that even a layperson would easily recognize the necessity for medical attention and treatment.

49. The force used by Defendants Turner and Dionne, or caused to be used by Defendants Turner and Dionne, was excessive in that it was used maliciously and sadistically for the very purpose of causing harm to Plaintiff.

50. As a direct and proximate result of Defendants Turner and Dionne's excessive use of force, Plaintiff has suffered, continues to suffer, and will continue to suffer, from substantial harm and damages, including permanent physical injuries, disfigurement, and emotional pain and suffering. Plaintiff is now a quadriplegic because of the harm inflicted upon her by Defendants Turner and Dionne.

WHEREFORE, the Plaintiff, Cheryl Weimar, demands judgment against the Defendants Turner and Dionne for compensatory damages, punitive damages, attorney's fees and costs, and such other relief as this court deems appropriate.

**COUNT II**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA)**
(*Against Defendant FDC*)

51. Plaintiff incorporates and re-alleges paragraphs 1 through 43 as if fully set forth herein.

52. This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, *et seq.* and 42 U.S.C. §§ 12131–12134, and its implementing regulations.

53. The ADA prohibits public entities from discriminating against individuals with disabilities in their services, programs, and activities. 42 U.S.C. §§ 12131–12134; *see also* 28 C.F.R. §§ 35.130. In other words, the ADA impose an affirmative duty on public entities to create policies and procedures to prevent discrimination on the basis of disability.

54. Defendant FDC is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

55. Plaintiff was disabled as the term is defined in 42 U.S.C. § 12102, 42 U.S.C. § 12131, and 28 C.F.R. § 35.108, as she suffered physical, mental, and intellectual impairments that substantially limited one or more major life activities.

56. Plaintiff's physical, mental, and intellectual impairments substantially limit one or more major life activities, including but not limited to caring for herself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working. 42 U.S.C. § 12102(2)(a); 28 C.F.R. § 35.108(c)(1)(i).

57. Plaintiff has a record of having physical, mental, and intellectual impairments that substantially limit one or more major life activity, as she has a history of having such impairments. 42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

58. Plaintiff is regarded by Defendant FDC as having physical, mental, and intellectual impairments that substantially limit one or more major life activity, as Defendant FDC perceives her as having such impairments. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f). Defendant FDC has subjected Plaintiff to a prohibited action because of her actual or perceived physical, mental, and intellectual impairments.

59. Plaintiff was a qualified individual with a disability because she met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant FDC, including but not limited to medical services. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

60. Plaintiff was brutally attacked and abused by FDC agents and employees, including Defendants Turner and Dionne, at Lowell CI because of her disabilities. Plaintiff was brutally beaten and denied medical treatment and intervention due to her disabilities, which were known to Defendant FDC and its agents and employees, including Defendants Turner and Dionne. Such abuse and denial of medical attention by Defendant FDC and its agents and employees, including Defendants Turner and Dionne, was in spite of Plaintiff's disabilities. Such abuse and denial of medical attention constitutes discrimination against an individual on the basis of disability in violation of Title II of the ADA. In fact, the beating Plaintiff received was because of her disabilities, and because of her requests for

14

accommodations. In other words, Plaintiff suffered retaliation and discrimination from Defendant FDC and its employees, including Defendants Turner and Dionne, for requesting accommodations and declaring inmate medical and psychological emergencies.

61. Plaintiff's exercise of her rights under the ADA was interfered with by the Defendant FDC through its agents and employees, including Defendants Turner and Dionne, in violation of 42 U.S.C. § 12203. *See also* 28 C.F.R. § 35.134.

62. Defendant FDC excluded Plaintiff from participation in, and denied her the benefits of, FDC services, programs, and activities (such as medical services) by reason of her disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

63. Defendant FDC subjected Plaintiff to discrimination on the basis of disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

64. Plaintiff's complaints about her pre-existing hip condition, and declaration of an inmate medical emergency, was a request for a reasonable accommodation for her physical impairment. Defendant FDC and its agents and employees, including Defendants Turner and Dionne, discriminated and retaliated against Plaintiff because of her physical disability and request for a reasonable accommodation. Further, Plaintiff declared an inmate psychological emergency seeking immediate medical treatment, which was a request for a reasonable accommodation for her mental impairment. Defendant FDC and its agents and

15

employees, including Defendants Turner and Dionne, ignored Plaintiff's reasonable requests for accommodations, and instead discriminated and retaliated against her because of her physical and mental disabilities.

65. Defendant FDC failed to provide Plaintiff with equal access to and enjoyment of effective services, programs, or activities that it provides as a public entity. 28 C.F.R. § 35.130(b)(1).

66. Defendant FDC knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

67. Defendant FDC showed deliberate indifference toward Plaintiff and her physical and mental disabilities, including but not limited to, when:

    a. On August 21, 2019, Defendants Turner and Dionne, FDC employees, brutally attacked Plaintiff because she complained of her pre-existing hip condition while cleaning toilets at the work camp and requested a reasonable accommodation for her physical disability;

    b. On August 21, 2019, despite Plaintiff declaring an inmate psychological emergency, Defendants Turner and Dionne, FDC employees, continued to brutally beat and manhandle her when it should have been objectively obvious and apparent that she needed emergency medical attention for her mental disability; and

  c. Defendants Turner and Dionne, FDC employees, failed to call medical or mental health personnel for intervention as required by FDC policy and procedure as a result of Plaintiff declaring inmate medical and psychological emergencies, instead resorting to the use of excessive force to brutally beat Plaintiff within an inch of death.

 68. Had Defendant FDC and its agents and employees, including Defendants Turner and Dionne, not been deliberately indifferent to Plaintiff's physical and mental disabilities, Plaintiff would not have suffered life-threatening injuries, including a broken neck, which has rendered her a quadriplegic.

 69. As a direct and proximate cause of Defendant FDC's actions and omissions, Plaintiff has suffered, continues to suffer, and will continue to suffer, from substantial harm and violation of her ADA rights.

 WHEREFORE, the Plaintiff, Cheryl Weimar, demands judgment against Defendant FDC for compensatory damages, including for permanent physical injury, disfigurement, and emotional pain and suffering, for all prejudgment interest allowable under law, for attorney's fees and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate.

## COUNT III
## SECTION 504 OF THE REHABILITATION ACT (RA)
### (*Against Defendant FDC*)

70. Plaintiff incorporates and re-alleges paragraphs 1 through 43 as if fully set forth herein.

71. This count is brought under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, *et seq.* and 29 U.S.C. § 791–794, *et seq.*, and its implementing regulations.

72. Section 504 of the RA prohibits discrimination against persons with disabilities by any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

73. Defendant FDC is a program or activity receiving federal financial assistance within the meaning of 29 U.S.C. § 794.

74. Defendant FDC excluded Plaintiff—a qualified individual with a disability—from participation in, and denied her the benefits of, programs or activities solely by reason of her physical and mental disabilities. 29 U.S.C. § 794(a); 29 U.S.C. § 705(20); 28 C.F.R. § 42.503(a).

75. Defendant FDC subjected Plaintiff—a qualified individual with a disability—to discrimination. 29 U.S.C. § 794(a).

76. Defendant FDC denied Plaintiff—a qualified handicapped person—the opportunity accorded to others to participate in programs and activities. 28 C.F.R. § 42.503(b)(1).

77. Defendant FDC utilized criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, and defeat or substantially impair accomplishment of the objectives of FDC's programs or activities with respect to handicapped persons. 28 C.F.R. § 42.503(b)(3).

78. Defendant FDC knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

79. As a direct and proximate cause of Defendant FDC's exclusion and discrimination, Plaintiff has suffered, continues to suffer, and will continue to suffer, from substantial harm and violation of her RA rights.

WHEREFORE, the Plaintiff, Cheryl Weimar, demands judgment against Defendant FDC for compensatory damages, including for permanent physical injury, disfigurement, and emotional pain and suffering, for all prejudgment interest allowable under law, for attorney's fees and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all counts alleged above.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

***/s/ Steven R. Andrews***
STEVEN R. ANDREWS (FBN: 0263680)
steve@andrewslaw.com
RYAN J. ANDREWS (FBN: 0104703)
*Admission to Middle District Pending*
ryan@andrewslaw.com
JOHN M. VERNAGLIA (FBN: 1010637)
*Admission to Middle District Pending*
john@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic service on this 31st day of October, 2019, to:

Thomas Gonzalez, Esq.
Nathan Paulich, Esq.
Gray Robinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Thomas.gonzalez@gray-robinson.com
Nathan.paulich@gray-robinson.com

***/s/ Steven R. Andrews***
STEVEN R. ANDREWS