UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHERYL WEIMAR,**

 Plaintiffs,

v.             **CASE NO.: 5:19-cv-548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF
CORRECTIONS, KEITH TURNER,
and RYAN DIONNE,**

 Defendants.

_____/

## PLAINTIFFS' MOTION TO PERMIT PLAINTIFF'S REPRESENTATIVES TO INTERVIEW INMATE WITNESSES

**COMES NOW**, Plaintiff, Cheryl Weimar, by and through the undersigned counsel, hereby files this Motion for a Court Order Permitting Plaintiff's Representatives to Interview Inmate Witnesses, stating as follows:

1. Plaintiff filed her Complaint in this matter alleging violations of the Americans with Disabilities Act and Rehabilitation Act, as well as Eighth Amendment violations, stemming from the brutal beating suffered by Plaintiff at the hands of two correctional officers, Defendants Turner and Dionne, employed by Defendant Florida Department of Corrections ("FDC"). [*See* Dkt. Nos. 1, 35.]

2. Plaintiff's attack occurred within Lowell Correctional Institution, a female prison in Ocala, Florida. According to investigation by the undersigned, there

were several, if not dozens, of inmates who were eyewitnesses to the brutal and unlawful beating of Plaintiff.

3. Historically, FDC has *always* permitted undersigned counsel to interview non-client inmate witnesses in connection with pending federal litigation. That is, undersigned counsel or its representatives simply had to request from FDC a legal visit with the eyewitness inmate, and FDC would approve visitation to facilitate an interview within approximately one week. *See, e.g.*, Composite Examples of Requests and Approvals for Interviews of Eyewitness Inmates, as Submitted to and Received from FDC, attached hereto as **Exhibit A**.

4. Following the attack on Plaintiff, and her filing of an initial complaint in connection therewith, the undersigned requested from FDC interviews with certain inmates who, upon information and belief, were eyewitnesses to the attack and thus had information that was discoverable, admissible, and likely to lead to discovery of admissible evidence. Specifically, Plaintiff initiated requests to interview the first wave of inmate witnesses by sending formal request letters to counsel for Defendant FDC, which notably identified several, certain inmate witnesses by name. *See* Composite Letters sent September 11, 2019 and September 13, 2019 from Steven R. Andrews to Defendant FDC's counsel of record, attached hereto as **Exhibit B**.

5. By way of response, and for the very first time in undersigned's experience in litigating and dealing with FDC, FDC took the position that Plaintiff's counsel and her representatives were not permitted to interview inmate witnesses, and that FDC had no obligation to make inmate witnesses available to Plaintiff's counsel, including those Plaintiff had explicitly identified and requested by name due to their known possession of discoverable evidence that is relevant and pertinent to the issues in this case. *See* Letters from Defendant FDC's counsel of record, Thomas M. Gonzalez, to Plaintiff's counsel on September 13, 2019 and September 16, 2019, attached hereto as **Exhibit C**.

6. Next, in the course of discussions among counsel regarding the Joint Report, FDC would not consent to allowing more than 10 total depositions to be taken by Plaintiff altogether in this action. Counsel for FDC stated that they did not perceive a need to conduct or allow more depositions, and thus insisted 10 was and would have to be sufficient. This objections was asserted by FDC despite the fact Defendant FDC's Rule 26(a)(1) disclosures listed twenty-two (22) witnesses in possession of discoverable information. *See* Rule 26 Initial Disclosures of Defendant FDC, dated November 13, 2019, attached hereto as **Exhibit D**.

7. Curiously, however, FDC did not list ***any inmate witnesses*** as an individual who possesses or may possess relevant or discoverable information—not even those Plaintiff had explicitly identified and requested by name in seeking to

conduct interviews. Indeed, those inmate witnesses, and an unknown universe of others, have been excluded and withheld from Plaintiff by FDC, both through FDC's prevention of access to such witnesses for interview, as well as FDC's nondisclosure of identities of any others inmate witnesses known by FDC to possess discoverable information relating to the attack, the events preceding, following and/or surrounding the attack, and/or other circumstances relevant to this action. While such an omission may be an accident or mistaken oversight, Plaintiff has obtained the names of over 24 inmates who have or may have discoverable information. *See* Plaintiff's Initial Rule 26(a)(1) Initial Disclosures, dated and served on November 13, 2019, attached hereto as **Exhibit E**.

8. In sum, despite listing twenty-two (22) witnesses, FDC objects to Plaintiff taking more than ten (10) depositions, and now objects further to Plaintiff interviewing or having any access to inmate witnesses to determine and learn their knowledge of discoverable or relevant information. Lacking any legal support or authority[1] for its withholding and prevention of access to evidence, FDC claims to be following an interpretation of FDC Policies and Rules, despite having never done so before with respect to undersigned counsel. *See* Fla. Admin. Code R. 33-601.711. Attached as **Exhibit F**. Irrespective of the language of the Rule, FDC has never prevented undersigned counsel from interviewing inmate witnesses who are not

---

[1] Other than its new interpretation of FDC Administrative Rules.

4

clients of the undersigned, particularly when the parties and/or counsel are fully aware that certain inmate witnesses are in possession of discoverable information. In other words, FDC has never previously interpreted this rule in the arbitrary manner in which it has now chosen to apply it. Indeed, interviewing witnesses is a basic tenet and requirement of participation in litigation.

9. FDC's omission of even one inmate eyewitness, let alone dozens, from its initial disclosures, is significant—indeed, it is unlikely that FDC could not identify even one inmate who may have discoverable information, particularly given that Plaintiff's interview requests placed FDC on notice of several of the inmate witnesses that FDC nevertheless excluded from its disclosures.

10. FDC's conduct is obstructive and designed to prejudice the Plaintiff, denying her Due Process rights under the Fifth and Fourteenth Amendment of the U.S. Constitution. This deprivation is amplified by the fact that FDC and its counsel have sole and exclusive access to and knowledge of all inmate witnesses, while undersigned counsel has no such access to determine what these witnesses know, what they saw, or who else witnessed the attack. Plaintiff will require and is entitled to access inmate witnesses, including to identify their possession of knowledge, as well as interview and receive their statements, in order to help prove her case.

11. Access and opportunity to interview witnesses is crucial in the context of inmate witnesses, as inmates are unavailable for purposes of compelling

attendance at trial. Thus, the taking of inmate witness depositions is necessary in order to present their testimony and evidence at trial, by way of reading deposition testimony to the jury. Certainly, a W*rit Ad Testificandum* can be entered, though undersigned is cognizant that such extraordinary relief is cautiously and seldom granted, particular for inmates whose testimony can—if not obstructed by FDC—be readily procured via deposition, and then subsequently presented to the jury.

12. Plaintiff anticipates also requesting an additional twenty depositions in this case.[2] Plaintiff has had medical providers at several DOC institutions and has been at two different hospitals since she was attacked. It is likely that the medical

---

[2] This figure represents Plaintiff's best and most educated guess, in good faith, based on the information presently available. Promptly after Plaintiff suffered her injuries, in August 2019, the undersigned began requesting records pertaining to Ms. Weimar and her medical care, treatment, injuries, and conditions. These requests continued to be made throughout September 2019, and the many requests that remained outstanding and unfulfilled were vigilantly pursued.

The documents requested as to Plaintiff included, *inter alia*, documents in the possession of Defendant FDC, as well as documents possessed by any of Ms. Weimar's medical providers and facilities, including Ocala Regional Medical Center, Memorial Hospital of Jacksonville, Lowell Correctional Institute, and Women's Reception and Medical Center. Despite the best efforts and reasonable diligence of undersigned, much of the crucial medical records and related documents were delayed for weeks, and even months. For example, it was not until November 25, 2019 that undersigned finally received Plaintiff's thousands of pages of medical records from FDC, after a delay of nearly three full months by FDC. As a result of FDC's profound delays, Plaintiff's medical expert and legal counsel, including the undersigned, have been unable to fully and completely review and assess Plaintiff's medical care, treatment, and status. Such review is still currently happening in real time due to FDC's delayed production of Plaintiff's medical records.

providers alone will exceed the ten (10) depositions to which Plaintiff is currently entitled. While Plaintiff will certainly need more than ten (10) depositions, interviewing inmate witnesses will reduce the potential number of depositions Plaintiff will need, weeding out inmates who do not have discoverable information, and ensuring that those inmates who do have discoverable information will be set for deposition.

13.   The object of the endeavor is to prepare the case for a fair trial. Preparing the case for a fair trial requires that Plaintiff's counsel and representatives be permitted to interview inmate witnesses who may have witnessed the brutal attack suffered by Plaintiff. As Judge Hinkle further noted in *Cimillo v. Austin*, *supra*, "availability of a prisoner for an interview may require the cooperation of FDC; indeed, without FDC's cooperation, an attorney may be unable to meet with a prisoner or talk with the prisoner on an unmonitored telephone." Here, FDC has been obstructive, flatly denying access to any and all inmate witnesses that have not retained the undersigned as their legal counsel or those that have not requested legal representation by undersigned counsel.

14.   Like in *Cimillo v. Austin*, *infra,* dozens of witnesses, including eyewitnesses, were identified by the parties, and thus the initial scheduling order permitted the parties to take as many as thirty-five (35) depositions. It is likely that the same number of depositions will be required in this case as well, in substantial

part due to the potential number of inmate eyewitnesses who are incarcerated and unavailable for purposes of testimony at trial, or who undersigned may not even be aware due to FDC's non-disclosure. However, determining a precise number of depositions that may be needed in this case will be significantly aided by the ability to interview inmate witnesses and confirm whether and to what extent they have discoverable and relevant information warranting deposition, or else rule them out as witnesses and deponents. FDC's actions in preventing undersigned counsel from interviewing inmate witnesses, and FDC's continued impairment of undersigned's ability to learn of and access knowledgeable inmate witnesses, would require Plaintiff to conduct dozens of inmate depositions, simply to determine whether they possess the information they are reported to have. Indeed, it may turn out that half of the inmates witnesses do not have relevant information or were not eyewitnesses to the entire event, rendering depositions thereof potentially unnecessary and duplicative.

      15.    Permitting interviews of inmate witnesses does not prejudice FDC, nor does it create a risk at the prison facilities. First, attorneys interview inmates every weekday at FDC facilities. Undersigned counsel and its representative, investigator Monica Jordan, have been permitted access into every FDC prison—*i.e.*, passed the requisite backgrounds—for which they have requested entry. Thus, continuing to allow access of undersigned and its representative presents no security risk, either.

16. Moreover, permitting inmate witness interviews would obviously conserve the resources of the parties, including by enabling a more precise determination and limitation of the number of depositions required. And permitting inmate witness interviews is also in the best interests of fundamental fairness, judicial economy, and conservation of resources, including by limiting depositions only to witnesses with relevant information and/or may be necessary witnesses.

## MEMORANDUM OF LAW

United States District Court Judge Robert L. Hinkle, of the Northern District of Florida, recently acknowledged the Court's awareness of issues caused by FDC's prevention of access to inmate witnesses in another care. As a result, Judge Hinkle entered an order in *Cimillo v. Austin*, *et al.*, 4:16-cv-584-RH/CAS, at ECF Doc. No. 162 (N.D. Fla. 2018), suggesting that FDC's cooperation may be necessary to ensure that plaintiff's counsel would have access to interview inmates to determine if they have discoverable information. *See* **Exhibit G**, attached hereto. And as similarly explained by a California federal court presented with this same issue, where an "attorney complained to the trial court that he and his investigator were having difficulty arranging interviews with inmates . . . due to prison regulations, 'the court offered to issue appropriate orders to accommodate counsel.'" See *Throop v. Diaz*, No. 12-cv-1870, 2014 U.S. Dist. LEXIS 68076, at *64-65 (S.D. Cal. Feb. 21, 2014).

Here, Due Process and the fair administration of justice requires Plaintiff to be able to conduct these witness interviews of incarcerated inmates. In cases involving inmates, oftentimes it is a tale of two stories, with inmates having to look to other inmates to help make their case, especially in a case like the present where Ms. Weimar recalls a few events prior to the attack, and then remembers next waking up in a hospital without the ability to move her arms, legs, or head.

Courts have addressed the need for counsel to interview incarcerated inmates before, and good cause warrants undersigned counsel to interview incarcerated inmates who are believed to have knowledge in the present matter.

**WHEREFORE**, Plaintiff, Cheryl Weimar, respectfully requests that the Court enter an Order GRANTING this Motion, and accordingly direct: (1) FDC to allow access and an opportunity for Plaintiff's undersigned legal counsel and its representatives to interview inmate witnesses upon request and reasonable notice in accordance with Fla. Admin. Code R. 33-601.711, even though Plaintiff's counsel and its representatives may not have an attorney client relationship with the incarcerated inmates; (2) that such interviews be unmonitored by FDC, and (3) such other relief as the Court deems just and proper.

Submitted this 5th day of December, 2019.

        **ANDREWS LAW FIRM**
        822 North Monroe Street
        Tallahassee, Florida 32303

T: (850) 681-6416 / F: 681-6984

*/s/ Steven R. Andrews*
STEVEN R. ANDREWS (FBN: 0263680)
steve@andrewslaw.com

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN: 0104703)
ryan@andrewslaw.com
JOHN M. VERNAGLIA (FBN: 1010637)
john@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Rule 3.01(g) of the Local Rules of the Middle District of Florida, the undersigned has conferred with counsel for Defendant Florida Department of Corrections in writing and by telephone regarding this Motion to Permit Plaintiff's Representatives to Interview Inmate Witnesses, and reports that Defendant Florida Department of Corrections objects to the relief requested herein.

*/s/ Steven R. Andrews*
STEVEN R. ANDREWS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic service on this 5th day of December, 2019, to:

Thomas Gonzalez, Esq.
Nathan Paulich, Esq.
Gray Robinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Thomas.gonzalez@gray-robinson.com
Nathan.paulich@gray-robinson.com
Sherry.Knox@gray-robinson.com
Laura.Stillwell@gray-robinson.com
Karen.Harris@gray-robinson.com
*Counsel for Defendant FDC*

Thomas R. Thompson, Esq.
Mallory R. Bennett, Esq.
Thompson, Crawford & Smiley
1330 Thomasville Road
Tallahassee, FL 32303
tom@tcslawfirm.net
mallory@tcslawfirm.net
rebecca@tcslawfirm.net
karen@tcslawfirm.net
*Counsel for Defendant R. Dionne*

Robert B. Buchanan, Esq.
Siboni & Buchanan, PLLC
1900 SE 18th Avenue, Suite 300
Ocala, Florida 34471
rbuchanan@sbtrial.com
aperry@sbtrial.com
*Counsel for Defendant K. Turner*

                                              */s/ Steven R. Andrews*
                                              STEVEN R. ANDREWS