UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHERYL WEIMAR,**

    **Plaintiffs,**

v.                                         **CASE NO.: 5:19-cv-548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF
CORRECTIONS, KEITH TURNER,
and RYAN DIONNE,**

    **Defendants.**

_____/

## **PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Cheryl Weimar, by and through undersigned counsel, Pursuant to Rule 37, Federal Rules of Civil Procedure, hereby files this Motion to Compel, and states:

### **Introduction**

The instant matter asserts claims against FDC and two of its employees, in connection with Plaintiff's requests for accommodations on August 21, 2019, for several disabilities, and the Defendants' violations of the ADA, RA, and Eighth Amendment. Further, there are issues related to the care Plaintiff has been receiving, for example, now Plaintiff has several bedsores on her back due to the injuries she sustained from the Defendants and the care she is currently received from Defendant FDC and its medical provider, Centurion. Under applicable law, the Defendants are liable for the injuries the result from their conduct in this matter, as well as all

1

foreseeable injuries or negligent acts of others that flow from the initial violations of the Eighth Amendment and ADA and RA.

Plaintiff has made several discovery requests to FDC, only to be delayed production as to several requests, and FDC having asserted objections and refusals to produce documents that are inapplicable, meritless, or should otherwise be overruled by this Court. Indeed, in response to one request, FDC refuses to produce 1,500 emails related to the Plaintiff (likely her care) that were sent or received since suffering a brutal attack at the hands of Defendants Turner and Dionne.[1] Further, FDC has refused to properly respond to interrogatories, declining to ask its own employees listed in the responses what their specific knowledge is of the August 21, 2019, incident, and whether they are aware of any other witnesses, either employees or inmates. This is objectively a failure to properly respond to discovery.

FDC has also failed to produce documents it is agreed to produce in its responses and conferrals, despite the requests being served on FDC approximately seventy (70) days ago. This delay has prejudiced Plaintiff in selecting witnesses to depose, as well as obtaining other facts that might be helpful and supportive to the claims asserted in this matter, or, alternatively, helpful to avoiding the Defendants' affirmative defenses.

---

[1] Based on some documents that FDC produced, it is clear that at least 10 other individuals may have violated Plaintiff's Eighth Amendment rights by applying force, or failing to temper the severity of the force used by others that was applied in violation of the Eighth Amendment. To the extent this matter does not resolve prior to the early mediation agreed to by the Parties, it is likely these individuals will also be added as Defendants.

## Background

Plaintiff served interrogatories to FDC on January December 2, 2019, requesting the following:

**Interrogatory Number 4 (*See* attached Exhibit A):**

Identify all Persons who have knowledge concerning the injuries sustained by Cheryl Weimar on August 21, 2019, and a full and complete description of their knowledge of the August 21, 2019, events concerning Cheryl Weimar.

**FDC Response (*See* attached Exhibit B):**

FDC responded to this interrogatory listing sixteen FDC employees/contractors (excluding Defendant Turner and Dionne), generally stating for essentially all of them, "…was assigned to duty on August 21, 2019, and may have knowledge of the allegations contained in the Complaint." It was clear from the response that FDC did not attempt to interview or question these employees to determine what they knew, what they saw, or whether inmates were witnesses and present for any part of their interactions with Plaintiff on August 21, 2019. This response is especially thin and deficient in that inmates have stated that they spoke to some of the witnesses listed by FDC during and immediately after the August 21, 2019, beating. *See* inmate statements attached hereto as composite **Exhibit C**. These witnesses state, amongst other things, that FDC Employee Esteban Baez jumped on Plaintiff and that FDC employee Benninghoff and others intentionally avoided tempering the severity of the

unjustified force, make clear that the knowledge listed for the FDC employee witnesses are deficient.

During the conferral, FDC stated that it in fact did not interview or question the witnesses it listed in its interrogatory responses to determine what their own employees/contractors knew about the incident. Subsequently, FDC produced incident reports[2] concerning what these employees wrote about the incident to FDC, however, it is not clear whether this is all that they know, or whether they are aware of any inmate witnesses. This places Plaintiff at a fundamental disadvantage in identifying from FDC's interrogatory responses which witnesses need to be deposed. **While not included as an objection in FDC's response in Exhibit B**, FDC later stated that it did not and would not interview any of the employees/contractors listed in its interrogatory response because the Florida Department of Law Enforcement is conducting an investigation into the actions of Turner, Dionne, and others.[3] An FDLE investigation cannot divest FDC of its duties and obligations under Rule 33, Federal Rules.

In seeking to avoid its discovery obligations because a different law enforcement agency is investigating the facts surrounding Plaintiff's near death

---

[2] These incident reports were not produced in response to the interrogatory requesting a list of witnesses and their specific knowledge of the incident.
[3] Indeed, if charges are brought, it is highly probable that other employees listed by FDC in its interrogatory response will also be charged with crimes related to their actions, inactions, or concerted efforts related to the unlawful beating Plaintiff suffered on August 21, 2019, based at least in part on the sworn statements of inmate witnesses.

beating and quadriplegia, FDC seeks an improper advantage by not having to disclose relevant witnesses, what they know, or, in this case, not even attempting to meet its obligations under Rule 33. FDC cites no case law for its proposition that it does not have to comply with Rule 33 because of FDLE's investigation.

While not directly on point, *In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749, 1995-2 Trade Cas. (CCH) P71136 (E.D. Pa. 1995), is instructive. In *In re Residential Doors*, the Court was faced with the recipients of discovery who stated that they would supplement their responses after it was clear that a criminal investigation was over. *Id*. The court compelled production and answers to discovery. Here, FDC's answer is nearly identical: while FDLE is investigating, FDC apparently has no intention of fully complying with its obligations under Rule 33. FDC's refusal to comply with Rule 33 is nearly identical to Defendant's Dionne and Turner asserting the Fifth Amendment to discovery responses and questions at their depositions: in other words, while FDC is not facing potential criminal liability as it is not a person, refusing to comply with Rule 33 until the FDLE investigation is over is akin to invoking Fifth Amendment, agreeing only to provide information Plaintiff is entitled to under the Federal Rules after FDLE's investigation is complete.[4] *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979).

---

[4] Even worse, the statutes cited by FDC would allow FDC to keep open an internal FDC criminal or administrative investigation for several years to avoid having to produce documents or fully and completely respond to interrogatory requests.

Indeed, it would be unfair to permit FDC to proceed with asserting defenses and otherwise contesting this lawsuit while also depriving Plaintiff of facts and information necessary to fully prepare its prosecution of this case. *See Id*.

Lastly, asking its own employees what they know, who was involved, and whether there were any other witnesses does not patently appear to wrongfully interfere with FDLE's investigation. Certainly counsel for FDC can undertake the inquiry of these witnesses so that discovery can be complete and can also do so without interfering with FDLE's investigation.[5] There also isn't any evidence to suggest that FDC itself would be unable to interview the witnesses without interfering or tainting FDLE's investigation. Indeed, fulfilling its obligations under the Federal Rules may in fact enable FDC to provide additional information to FDLE that warrants charges for additional individuals. FDC does not state and Plaintiff does not suggest that FDC would be attempting improperly interfere with FDLE's investigation simply by asking the employees it listed as having knowledge what their specific knowledge is and who else may have been witnesses.

Plaintiff seeks an order compelling FDC to properly respond to this basic and routine interrogatory, listing the witnesses it knows of, as well specifying what knowledge its employee witnesses have and whether they are aware of any other

---

[5] Gray Robinson, and specifically FDC counsel in this case, have an impeccable reputation. Undersigned counsel proposes as a potential solution to FDC's asserted concern (which Plaintiff disputes) that the inquiry be conducted by FDC's counsel who certainly would be immune to any accusation or criticism that interviewing FDC's listed witnesses interfered with FDLE's investigation.

6

witnesses, including specifically inmate witnesses. Alternatively, if the Court finds that the responses are sufficient in light of FDLE's investigation, Plaintiff requests this Court clarify what these sixteen (16) witnesses are permitted to testify to in light of FDC's ability to not fully respond to the interrogatory based on the FDLE investigation as it will cause extreme prejudice to Plaintiff. In other words, Plaintiff seeks clarification as to whether these witnesses will be permitted to testify to matters for which they were not properly/specifically disclosed to testify to specifically, only generally, due to lack of notice.

### Plaintiff's Requests to Produce

**Request Number 17 (See attached Exhibit D)**

All videos, including fixed wing video and handheld video, from Lowell CI, Lowell Work Camp, and Lowell Annex, from 12:01am on August 21, 2019, through 11:59pm, August 21, 2019, which shows or depicts Cheryl Weimar.

**FDC Response (See attached Exhibit E)**

See response and objections to request number 16.

Response to 16 - The Defendant objects to request number 16, which seeks all video, including fixed wing video and handheld video from three department facilities, from 12:01am through 1:59pm on August 21, 2019. The requested videos include records, information, photographs, audio and visual presentations, schematic diagrams, surveys, recommendations or consultations or portions thereof relating directly to the physical security of an institution or revealing security systems of an institution and are confidential under §§ 119.071(3) and 281.301, Florida Statutes (2019). The information may also be part of an active investigation and protected under § 119.071(2). The records

are also confidential under § 112.533(2)(a), Florida Statutes, as they involve an on-going investigation regarding law enforcement or correctional officers.

The Defendant also objects on the basis of overbreadth, undue burden, and relevance. To the extent that the video is even available, the request would result in an entire day's worth of video from every fixed wing video source across three department of corrections facilities and likely result in hundreds of hours, if not weeks of video footage, all of which would need to be reviewed and processed by the Defendant. The burden of production substantially outweighs any benefit to the Plaintiff, as a majority of the footage would be unrelated to the allegations in the complaint and have no bearing on any party's claims or defenses.

Plaintiff incorporates its response from above herein. First, Plaintiff agreed to limit the scope of this request to 8am to 12pm on August 21, 2019. However, even with the narrowed scope, FDC still refused to produce the responsive videos. These videos were not created pursuant to any investigation, criminal or civil. As for the fixed wing cameras, those cameras always record at the prison. Hand held cameras, which were used after the main force on Plaintiff that made her unconscious and likely broke her neck, were on from minutes after the initial force until she left the prison, have also been withheld by FDC.

FDC objects to production based on confidentiality, however, that objection is moot because Plaintiff has signed a confidentiality agreement. See attached **Exhibit F**. Second, FDC asserts that the responsive video, which does exist, "may also be part of an active investigation…" To be clear, there is an investigation, but Plaintiff does not seek these records from FDLE, which were obtained by FDLE

from FDC in response to a lawful FDLE investigation. These records are not protected by Rule 6(e), Federal Rules of Criminal Procedure, or any other similar Florida Statute. In reality, Plaintiff suggests these records are being withheld because they show what everyone expects they will show: that Plaintiff was savagely beaten and then unconscious through the time the ambulance arrived at FDC while she was being dragged around Lowell Work Camp and the Lowell Annex towards confinement. These records (videos and audio) were created by FDC in the ordinary course of business and cannot be said to have been created pursuant to a law enforcement investigation, or for the purposes of a law enforcement investigation. Plaintiff doesn't seek to release the videos to the public as part of this request, she merely seeks relevant evidence that will bear on the claims and defenses, and evidence that likely films a time where she was unconscious due to the unlawful beating she suffered by Defendant Dionne and Defendant Turner.

All of the objections asserted by FDC only deal with confidentiality, which has been addressed by FDC requiring Plaintiff's counsel to sign a confidentiality agreement. Thus, pursuant to that agreement, these records should have already been produced. Plaintiff can only assume, with good measure due to what Plaintiff asserts are non-meritorious objections, that the video corroborates the sworn statements of several inmates who have signed sworn statements in this matter. *See Supra* at Exhibit C.

But FDC's effort in responding to this request, as others, is relevant to the weight this Court should give FDC's arguments. For example, FDC's response states "To the extent the video is even available…", making clear, yet again, FDC didn't even bother to fulfill its obligations under Rule 34 to determine whether video was available and, if so, how much was available. While the amount of time available and requested is now moot due to Plaintiff's agreement to narrow the scope of the request, FDC's answer is still enlightening as to the minimal effort FDC put forth in its deficient discovery responses.

Plaintiff was likely caught on FDC fixed wing videos at the Lowell Work Camp, all the way through the time she was taken by van from the Lowell Work Camp next door to the Lowell Annex. This video will depict what happened to Plaintiff during this time period, as well as whether any of the FDC employees or witnesses have given truthful statements. Certainly the responsive video is likely to be lengthy, but it was FDC's decision to take Plaintiff from one prison facility to an entire different facility. The fact that the videos will span several hours does not make them any less relevant and necessary to the prosecution and defense of this case.

Thus, Plaintiff requests an order requiring FDC to produce all fixed wing video and hand held video from August 21, 2019, from 8am through 12pm.

**Request to Produce Number 19**

All use of force incidents which mention or discuss Cheryl Weimar while she was in FDC custody.

**FDC Response**

RESPONSE: The Defendant will produce the report from an August 25, 2017 incident involving the use of force against the Plaintiff.

Currently excluded from the Defendant's response to request number 19 are incident reports pertaining to the August 21, 2019 incident involving the Plaintiff. Those incident reports were included in a use of force packet that was sent to the Florida Department of Law Enforcement and are part of the FDLE's active investigation. Documents that are part of an active investigation are not subject to release, per § 119.071(2). *See also* § 945.10. The records are also confidential under § 112.533(2)(a), Florida Statutes, as they involve an on-going investigation regarding law enforcement or correctional officers.

Beyond that the Defendant objects to request number 19 on the basis of relevance, overbreadth, undue burden, and proportionality. The request broadly seeks all use of force incidents which "mention or discuss" the Plaintiff during the time she was in FDC custody. By its terms, the request would include any number of incidents unrelated to the Plaintiff, where force was not used against the Plaintiff and she was just "mention[ ed] or discuss[ed] in the report." Obtaining these reports would involve a search of every use of force incident during the entirety of the Plaintiffs incarceration to determine whether they "mention" the Plaintiff. The incidents are unrelated to the allegations in the complaint and would have no bearing on any party's claims or defenses.

Plaintiff reincorporates its response and argument for Request to Produce Number 17 herein. FDC states that it is withholding use of force packets related to the August 21, 2019, incident. FDC has produced the use of force reports, but only in a redacted form. For the reasons set forth above in response to Number 17,

Plaintiff requests FDC produce the use of force reports in an unredacted form. See Incident reports attached as composite **Exhibit G**.

The redacted portions of the incident reports are simply whether superior officers or wardens approved of the use of force and the comments they added to the requests. FDC asserts that those reviews by senior FDC employees is part of an FDLE investigation, however, those comments and views of FDC supervisors are completed within the ordinary course of business for FDC and within the course and scope of the supervisor employees' duties. The FDC supervisors do not complete these documents for the purposes of criminal investigations. They are simply completed as part of FDC internally determining whether the use of force complied with Federal and Florida law, as well as FDC rules, policies and procedures. Plaintiff is entitled to know what is contained in the redacted portions of the documents.

Thus, Plaintiff requests an order requiring FDC to produce the documents in Exhibit G in an unredacted form.

**Request to Produce Number 22**

All FDC internal audio recordings on August 21, 2019, concerning the use of force on Cheryl Weimar.

**FDC Response**

**RESPONSE:** Currently excluded from the Defendant's response to request number 22 are records included in a use of force packet that was sent to the Florida Department of Law Enforcement and are part of the FDLE's active investigation. Documents that are part of an active

investigation are not subject to release, per § 119.071(2). The records are also confidential under § 112.533(2)(a), Florida Statutes, as they involve an on-going investigation regarding law enforcement or correctional officers.

Plaintiff reincorporates its response and argument for Request to Produce Number 17 above herein. Further, to the extent there are audio recordings of internal radio calls and communications between FDC employees on August 21, 2019, before, during and after the incident concerning Plaintiff, those also should be produced for the reasons above.

To the extent these audio recordings exist of internal FDC radio communications or videos that contain responsive audio, Plaintiff requests this Court enter an order requiring FDC to produce the responsive audio recordings.

**Requests to Produce Numbers 31 and 36**

31-All Communications between FDC employees concerning Cheryl Weimar from August 20, 2019, through the present date. Please include a privilege log for all documents for which you assert a privilege.

> **RESPONSE:** The Defendant objects to request number 31 on the basis of overbreadth, undue burden, and proportionality. The request broadly seeks all communications between FDC employees that merely "concem[s]" the Plaintiff. The Defendant is the third largest state prison system in the United States and has more than 24,000 full-time employees. There is no indication that the request communications would be relevant to the allegations of the complaint or relevant to any party's claims or defenses.

36-All Communications between FDC employees which do not include FDC attorneys, concerning Cheryl Weimar, from August 20, 2019, through the present date.

**RESPONSE:** See Defendant's objections to request number 31.

Response to 31 - The Defendant objects to request number 31 on the basis of overbreadth, undue burden, and proportionality. The request broadly seeks all communications between FDC employees that merely "concern[s]" the Plaintiff. The Defendant is the third largest state prison system in the United States and has more than 24,000 full-time employees. There is no indication that the request communications would be relevant to the allegations of the complaint or relevant to any party's claims or defenses.

First, just like FDC's other responses, FDC didn't even bother in its initial response to determine how many, if any, responsive Communications and specifically emails, were sent or received during the requested time period concerning Cheryl Weimar to support its objection that the request was overly broad and unduly burdensome. Such a response is facially deficient, as FDC merely states boilerplate objections to again avoid having to produce discovery, without even determining if the requests is overbroad or causes undue burden. "Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit ...." *Polycarpe v. Seterus, Inc.*, 2017 U.S. Dist. LEXIS 77808, at *4 (M.D. Fla. May 23, 2017) (*citing Siddiq v. Saudi Arabian Airlines Corp.*, 2011 U.S. Dist. LEXIS 151474, at *3 (M.D. Fla.

14

Dec. 7, 2011)) (*quoting Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007)). Indeed, during conferral, Plaintiff pointed out FDC in fact had not even conducted a computer search for emails to determine if the request caused an undue burden. FDC counsel confirmed that a search had not been performed prior to asserting its boilerplate objections. FDC also asserted in its response that the request, for communications concerning Plaintiff since the day before she suffered an unlawful beating, would result in a return of documents irrelevant to the allegations of the complaint is meritless. However, yet again, FDC's response establishes that FDC didn't even bother to conduct a search to determine if responsive records were obtained in response to the search and whether they were wholly unrelated to the allegations in the complaint or the asserted defenses in this case.[6]

This request clearly seeks relevant documents. Plaintiff doesn't seek communications concerning years prior to her August 21, 2019 beating[7], only those from the **day prior** to the day she was attacked through the date of the request. This request is likely to return documents which discuss her medical care, transfers, and may identify witnesses who have not been previously identified in FDC's

---

[6] Defendant Dionne has asserted affirmative defenses that include failure to mitigate damages, that Plaintiff has not suffered a physical injury, any inaction of Defendant didn't cause the injuries, that Plaintiff caused or contributed to her own injuries, that Plaintiff lacks standing to bring her complaint, that Plaintiff has unclean hands, collateral source, amongst others. *See ECF No. 47, pp. 6-8*. It is overwhelmingly likely that the Communications sent about Plaintiff during this time period bear on these defenses.

[7] They may ultimately be relevant as it relates to Plaintiff's disability and to FDC's knowledge of the disability, and, thus any communications about Plaintiff during the time of her current incarceration in 2016 may also be relevant although have not been requested yet.

Interrogatory responses. Communications concerning Plaintiff's medical care is especially relevant and important because Plaintiff has recently developed bedsores. Plaintiff's bedsores flow from her injuries because if she was able to move and not confined to a hospital bed, she certainly would not have developed any bedsores.

After multiple conferrals, FDC agreed to do what it should have done before it responded, conduct a search for emails. Despite initially objecting because FDC "…has more than 24,000 full-time employees[,]" and such requested would be unduly burdensome and was overly broad, **only 1,500 emails were determined to be responsive to the discovery request**.[8] Based on FDC's estimate of the number of its employees, the fact that only 1,500 responsive emails were returned shows that Plaintiff's request was appropriately narrow. Further, to the extent the Court believes that the review of 1,500 emails is burdensome, which Plaintiff submits it is not, the number of emails justifies the request. Plaintiff is one inmate of approximately 100,000 incarcerated inmates within FDC and was an otherwise un-notable inmate prior to her beating on August 21, 2019. While Plaintiff's attack and subsequent injuries is one of the worst atrocities to a single inmate, with or without disabilities, within FDC by FDC employees in the history of the state agency, the fact that 1,500 emails have been sent which mention her name, discuss her condition, or otherwise

---

[8] While Plaintiff is appreciative of FDC's decision during the conferral process to actually conduct the search, this is evidence that the objections were posed by design to delay and frustrate the discovery process.

mention Plaintiff, since the date of her injury, in and of itself suggests that the emails are "relevant to [Plaintiff's] claim…and proportional to the needs of the case…" *See* Fed. R. Civ. P. 26(b)(1). Plaintiff, although an inmate, suffered a severe and unjustified beating that resulted in permanent quadriplegia. The issues at stake in the litigation are substantial, just like the amount in controversy in light of the fact that Plaintiff will need around the clock specialized care for the rest of her life. It is disingenuous for FDC to assert that it is unduly burdensome to review 1,500 emails when it has an agency of 24,000 employees. Indeed, Plaintiff's medical records have or soon will exceed 1,500 pages. The personnel files FDC has agreed to produce for sixteen (16) of its employees may also exceed 1,500 pages.

Whether FDC sent 10, 100, or 1500 emails concerning Plaintiff from the day before she was attacked through the date of the request, those Communications are relevant to Plaintiff's claims as they likely discuss Plaintiff's condition, treatment, transfers, conditional medical release, and identify potential witnesses, as an example, and will be relevant to Plaintiff's attempt to overcome the defenses of Defendant Dionne and likely the defenses of Defendant Turner when he files an answer to the Second Amended Complaint.

Thus, this Plaintiff requests this Court enter an order requiring FDC to produce all Communications responsive to the request, including an order requiring

FDC to produce specifically the 1,500 emails returned from the computer search FDC conducted only after it asserted its objections.

## Conclusion

Plaintiff has demonstrated that Defendant FDC has wrongfully failed to provide complete answers to interrogatories, improperly withheld and improperly redacted responsive documents. Plaintiff requests an order compelling all responses and requested herein.

WHEREFORE, Plaintiff requests an Order compelling production as requested herein.

    Respectfully submitted,

    **ANDREWS LAW FIRM**
    822 North Monroe Street
    Tallahassee, Florida 32303
    T: (850) 681-6416 / F: 681-6984

    */s/ Ryan J. Andrews*_____

    */s/ John M. Vernaglia*_____
    STEVEN R. ANDREWS (FBN: 0263680)
    RYAN J. ANDREWS (FBN: 0104703)
    JOHN M. VERNAGLIA (FBN: 1010637)
    steve@andrewslaw.com
    ryan@andrewslaw.com
    john@andrewslaw.com
    service@andrewslaw.com
    *Counsel for Plaintiff*

## **LOCAL RULE 3.01(g) CERTIFICATE**

Pursuant to Rule 3.01(g) of the Local Rules of the Middle District of Florida, the undersigned has conferred with counsel for Defendant Florida Department of Corrections in writing and by telephone on numerous occasions regarding this Motion to Compel, and reports that Defendant Florida Department of Corrections objects to the relief requested herein.

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic service on this 11th day of February, 2020, to:

Thomas Gonzalez, Esq.
Nathan Paulich, Esq.
Gray Robinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Thomas.gonzalez@gray-robinson.com
Nathan.paulich@gray-robinson.com
Sherry.Knox@gray-robinson.com
Laura.Stillwell@gray-robinson.com
Karen.Harris@gray-robinson.com
*Counsel for Defendant FDC*

Thomas R. Thompson, Esq.
Mallory R. Bennett, Esq.
Thompson, Crawford & Smiley
1330 Thomasville Road
Tallahassee, FL 32303
tom@tcslawfirm.net
mallory@tcslawfirm.net
rebecca@tcslawfirm.net
karen@tcslawfirm.net
*Counsel for Defendant R. Dionne*

Robert B. Buchanan, Esq.
Siboni & Buchanan, PLLC
1900 SE 18th Avenue, Suite 300
Ocala, Florida 34471
rbuchanan@sbtrial.com
aperry@sbtrial.com
*Counsel for Defendant K. Dionne*

                                  */s/ Ryan J. Andrews*
                                  RYAN J. ANDREWS