# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**CHERYL WEIMAR,**

     **Plaintiff,**

**v.**                        **CASE NO.: 5:19-cv-548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF**
**CORRECTIONS, KEITH TURNER,**
**and RYAN DIONNE,**

     **Defendants.**

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT RYAN DIONNE

Plaintiff, Cheryl Weimar, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56(a), hereby files this Motion for Summary Judgment, moving this Honorable Court for entry of an Order granting judgment against Defendant, Ryan Dionne ("Dionne"), for his use of excessive force to cause harm to Plaintiff in violation of the Eighth Amendment to the United States Constitution. The indisputable evidence establishes that Defendant Dionne violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishments by using excessive force on Plaintiff, causing her to suffer severe and permanent injuries. Accordingly, Plaintiff is entitled to summary judgment on her Eighth Amendment excessive force claim against Defendant Dionne.

## INTRODUCTION

This is a civil rights action for monetary damages. Plaintiff is currently incarcerated within the Florida Department of Corrections' ("FDC") prison system. On August 21, 2019, Defendant Dionne, an FDC correctional officer, violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishments when he applied force maliciously and sadistically for the very purpose of causing harm to Plaintiff. To be clear, the undisputed, material facts establish the constitutional violation asserted against Defendant Dionne. After handcuffing Plaintiff, Defendant Dionne delivered lethal blows, which ultimately broke Plaintiff's back and neck. As a result, Plaintiff is now permanently quadriplegic.

Additionally, Defendant Dionne has invoked his Fifth Amendment privilege against compelled self-incrimination, and has chosen to maintain his silence as to the undisputed material facts that establish the constitutional violation asserted against him by Plaintiff. Indeed, Defendant Dionne has refrained from answering any questions related to the unlawful beating he inflicted upon Plaintiff. In short, Defendant Dionne has refused to respond to the allegations and probative evidence offered against him. Thus, the Court is entitled to, and should, draw adverse inferences against Defendant Dionne based on his repeated invocations of the Fifth Amendment and refusal to answer any questions pertaining to his actions and the events which caused Plaintiff's permanent injuries and quadriplegia.

In addition, but notwithstanding, to the adverse inferences that should be drawn from Defendant Dionne's invocation of the Fifth Amendment and refusal to respond to the allegations and probative evidence against him, the overwhelming and undisputed evidence conclusively establishes that Defendant Dionne violated Plaintiff's Eighth Amendment rights by using force maliciously and sadistically to cause harm to Plaintiff. Accordingly, Plaintiff is entitled to judgment as a matter of law on her Eighth Amendment excessive force claim against Defendant Dionne.

### STATEMENT OF UNDISPUTED, MATERIAL FACTS

Plaintiff has been incarcerated and in the custody of the Florida Department of Corrections ("FDC") since January 21, 2016. *See, e.g.*, ECF No. 80-1 at FDC 03.[1] When Plaintiff entered FDC, she was not a quadriplegic and had full use of her extremities, aside from a bad back and hip, which regularly would cause her to walk with a limp. *See id.* at FDC 03-012; *see also* ECF No. 80-13 at ¶ 4 (Sworn Statement of Jessica Saleman).

On August 21, 2019, Plaintiff was housed at the Lowell Work Camp. *See* ECF No. 80-14 at 7 (Lowell Work Camp Inmate List on August 21, 2019). Plaintiff's work assignment was "houseman," which required her to clean the bathrooms at the

---

[1] Plaintiff's FDC Medical Records are separated into 12 volumes (totaling 1147 pages). *See* ECF Nos. **80-1** (FDC 01-0110), **80-2** (FDC 0111-0211), **80-3** (FDC 0212-0299), **80-4** (FDC 0300-0411), **80-5** (FDC 0412-0521), **80-6** (FDC 0522-0628), **80-7** (FDC 0629-0725), **80-8** (FDC 0726-0835), **80-9** (FDC 0836-0928), **80-10** (FDC 0929-01036), **80-11** (FDC 01037-01141), **80-12** (FDC 01142-01147).

Work Camp, among other duties. *See id.*; ECF No. 80-15 at ¶ 3 (Sworn Statement of Cheryl Weimar); *see also* ECF No. 80-13 at ¶ 6. On August 21, 2019, Plaintiff was having hip and back problems and informed FDC staff that she was unable to continue cleaning the bathrooms. ECF No. 80-15 at ¶ 3. FDC staff became confrontational with Plaintiff after she stated that she could not clean the bathrooms, causing Plaintiff to declare a medical emergency. *Id.*; *see also* ECF No. 80-13 at ¶ 7.  In response to Plaintiff declaring a medical emergency, Defendant Keith Turner ("Turner") stated to Defendant Dionne—"Let's go take care of this"—and the two officers went to the area of the Lowell Work Camp where Plaintiff was reportedly located. ECF No. 80-13 at ¶ 8. Minutes later, Plaintiff declared a psychological emergency. *See* ECF No. 80-13 at ¶ 9. Plaintiff has a known, and well-documented, history of mental disorders, including major depressive disorder, severe anxiety, and bipolar disorder. *See* ECF Nos. 80-1 at FDC 013; 80-8 at FDC 0799-0835; 80-9 at FDC 0836-0928; 80-10 at FDC 0929-0958; *see also* ECF No. 80-16 (Sworn Statement of Joyce Laberta).

In response to Plaintiff declaring a medical and psychological emergency, Defendant Dionne and Defendant Turner walked Plaintiff out of the A-Dorm at the Work Camp. *See* ECF No. 80-17 at ¶ 3 (Affidavit of Victoria Scifo). Plaintiff was handcuffed from behind. *Id*; *see also* ECF No. 80-18 at ¶ 7 (Affidavit of Brittany Flutie Davis). Plaintiff began stating, "Ow that hurts" and "Please, that hurts." ECF

No. 80-17 at ¶ 4. Plaintiff was completely compliant while cuffed, not kicking or acting out. *Id.* at ¶ 4. Defendant Turner threw Plaintiff to the ground and, while Defendant Dionne was holding her down, began kneeing Plaintiff in the neck and back, approximately three times. *Id.* at ¶ 5; *see also* ECF No. 80-19 at ¶ 4 (Affidavit of Amanda Edwards). Plaintiff became soundless and motionless in response. ECF No. 80-17 at ¶ 6. Plaintiff's head hit the ground before her body when Defendant Turner threw her to the ground. *Id.* Plaintiff was believed to be dead. *Id.* The repeated, forceful blows apparently knocked her unconscious. *See* ECF No. 80-19 at ¶ 6. Defendant Dionne and Defendant Turner then dragged the motionless body of Plaintiff to the Work Camp medical building across a big green field and pavilion, allowing her head to bobble like a rag doll with her eyes rolled back into her head. ECF Nos. 80-17 at ¶ 7; 80-13 at ¶ 10; 80-18 at ¶ 2; 80-19 at ¶ 6. Defendant Dionne later stated that he "beat [Plaintiff] stupid" because she couldn't clean a toilet. ECF No. 80-17 at ¶ 12.

As a result of the brutal beating by Defendants Dionne and Turner, Plaintiff suffered a broken back and neck and is now permanently quadriplegic. *See* ECF No. 80-1 at FDC 019.

### **Defendant Dionne's Invocation of the Fifth Amendment**

Defendant Dionne invoked his Fifth Amendment privilege in response to all of Plaintiff written discovery requests to date, including Plaintiff's First

Interrogatories and Plaintiff's Second Interrogatories. *See* ECF No. 80-22 (composite exhibit). More importantly, Defendant Dionne invoked his Fifth Amendment right and refused to answer questions put to him at his deposition concerning his conduct and the events that occurred on August 21, 2019. *See generally* ECF No. 80-23.[2] For example, Defendant Dionne invoked his Fifth Amendment right when asked the following questions at his deposition:

> Q. Did you use force on Cheryl Weimar on August 21st, 2019?[3]

> Q. Do you assert that Cheryl Weimar engaged in physical resistance in response to a lawful command given by you on August 21st, 2019?[4]

> Q. Did Cheryl Weimar disobey a lawful command given by you on August 21st, 2019?[5]

> Q. Isn't it true that on August 21st, 2019, Ms. Weimar engaged in no conduct that would have justified any use of force?[6]

> Q. Isn't it true that on August 1 21st, 2019, Ms. Weimar did not disobey any command given by you or Keith Turner?[7]

> Q. Isn't it true that Ms. Weimar did not strike you with her hands or arms at any point on August 21st, 2019?[8]

---

[2] *See also* ECF No. 80-24 (Exhibits to Defendant Turner and Dionne's Depositions).

[3] ECF No. 80-23 at 9:2-4. In response, Defendant Dionne stated, "I'm asserting my Fifth Amendment rights." Defendant Dionne provided the same answer to every deposition question cited herein.

[4] *Id.* at 9:15-18.

[5] *Id.* at 9:19-21.

[6] *Id.* at 9:22-25; *see also id.* at 13:24–14:2.

[7] *Id.* at 10:1-4.

[8] *Id.* at 10:21-23.

Q. Isn't it true that Ms. Weimar did not strike you or kick you with her feet or legs on August 21st, 2019?[9]

Q. Now, on August 21st, 2019, did Ms. Weimar engage in any conduct that made you fear for the safety of yourself or any other employees at the Department of Corrections?[10]

Q. Now, in reading Miss Scifo's affidavit do you disagree with any of the statements made in her affidavit in Exhibit 2?[11]

Q. Was Ms. Weimar being completely compliant and not kicking or acting out while she was cuffed with you?[12]

Q. Did you -- after Ms. Weimar was in handcuffs -- how about this, on August 21st, 2019, did you strike Ms. Weimar with either of your hands?[13]

Q. Specifically in Paragraph 4 it says, I saw Officer Dionne and Lieutenant Turner on each side of a white older female inmate. Next thing I saw the white 1 female was on the ground and Lieutenant Turner had his knee forcefully in her back. Is that statement by Miss Edwards false or incomplete?[14]

Q. Paragraph 6 specifically mentions you again. It says, Both Officer Dionne and Lieutenant Turner started dragging the white lady toward the medical unit. It looked like she was unconscious the way her head was wobbling around. Is that statement by Miss Edwards false or incomplete?[15]

---

[9] *Id.* at 10:24–11:1; *see also id.* at 29:4-6.

[10] *Id.* at 13:14-18.

[11] *Id.* at 24:4-7; *see* ECF No. 80-17.

[12] ECF No. 80-23 at 25:12-14.

[13] *Id.* at 25:20-23.

[14] *Id.* at 29:24–30:6; *see* ECF No. 80-19 at ¶ 4.

[15] ECF No. 80-23 at 30:10-17.

> Q. You see in Paragraph 11 where it ends and it says that both you [Dionne] and Mr. Turner, quote, tossed Cheryl into the van without concern for her health or well-being. Is Miss Saleman lying in that statement? [16]

Defendant Dionne's refusal to answer the substantive and specific questions cited above provides additional supporting evidence of the constitutional violation asserted against him. Consequently, Plaintiff is entitled to an adverse inference that the answers to such questions would not have been favorable to Defendant Dionne.

## ARGUMENT

### I.   Summary Judgment Standard

Summary judgment is appropriate and should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party; however, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the

---

[16] *Id.* at 35:24–36:3; *see* ECF No. 80-13 at ¶ 11.

substantive law governing the case, such that its presence or absence might affect the outcome of the suit." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson*, 477 U.S. at 248).

A movant's "burden under Rule 56 of 'showing' there are no genuine issues of material fact does not mandate citing record evidence at every turn." *Humphreys v. General Motors Corp.*, 839 F. Supp. 822, 825 (N.D. Fla. 1992). Conversely, in opposing summary judgment, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Unum Life Ins. Co. of Am. v. Sisk*, No. 4:12cv62-RH/CAS, 2012 U.S. Dist. LEXIS 184554, at \*4 (N.D. Fla. Dec. 6, 2012) (quoting *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)).

"The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment." *United States v. Neely*, No. 3:07cv217/MCR/EMT, 2008 U.S. Dist. LEXIS 115307, at \*8 (N.D. Fla. Sep. 29, 2008) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210. 1217 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1544-5 & n.5 (11th Cir. 1992)). Thus, "[t]he court is not obliged [] to deny summary judgment for the moving party when the evidence favoring the nonmoving party is 'merely colorable or is not significantly probative.'" *Id.* at \*7 (quoting *Anderson*, 477 U.S. at 249-50). Additionally, while "facts must be viewed in the light most favorable to the nonmoving party," such inferences are proper "***only***

*if there is a 'genuine' dispute as to those facts*." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (emphasis added) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

"[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (*quoting Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## II.    Defendant Dionne violated Plaintiff's Eighth Amendment Right to be Free From Excessive Force

### A. Standard for Excessive Force Claims

The "core judicial inquiry" on an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); and citing *Whitley v. Albers*, 475 U.S. 312, 319-321 (1986)).

In determining whether force was applied maliciously and sadistically, courts consider the following factors: (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force. *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (citing *Whitley*, 475 U.S. at 321), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010); *see also Fennell v. Gilstrap*, 559 F.3d 1212, 1217-20 (11th Cir. 2009) (applying these factors). Thus, when prison officials maliciously and sadistically use force to cause harm to an inmate, a constitutional violation is established.

### B. Defendant Dionne Used Excessive Force to Cause Harm to Plaintiff

Under the five *Whitley* factors, the undisputed facts establish that Defendant Turner maliciously and sadistically used force to cause significant injury to Plaintiff.

Plaintiff did not resist, refuse and order, or cause any disturbances which would have necessitated the use of force. Nevertheless, Defendant Dionne assisted Defendant Turner with throwing Plaintiff—who was handcuffed and compliant—to the ground and holding her down while Defendant Turner rammed his knee into her neck and back, breaking Plaintiff's back and causing her to suffer severe injuries. As

a result of Defendant Dionne's malicious and sadistic use of force, Plaintiff suffers from permanent quadriplegia.

First, there was clearly no need for force. Defendant Dionne knew that Plaintiff had declared a medical emergency and was present when Plaintiff declared a psychological emergency. Plaintiff was not resisting, causing any disturbances, or engaging in any conduct that would have justified the use of any force. *See Thompson v. Sikes*, No. 4:15cv253-MW/CAS, 2017 U.S. Dist. LEXIS 26385, at *10 (N.D. Fla. Jan. 25, 2017) ("[I]f there is no disturbance, there is no need for force at all."). In fact, the evidence is clear that Plaintiff was compliant at the time that she suffered her injuries. Defendant Dionne's invocation of the Fifth Amendment when asked whether Plaintiff was resisting or causing a disturbance and whether use of force was justified further supports the undisputed evidence that there was no need for force. *See* ECF No. 80-23 at 9:15-25, 10:1-4, 10:21–11:1, 12:24–14:2, 29:4-6.

Second, the amount of force used was clearly disproportionate to the amount of force required. Indeed, no force was required because, as explained above, Plaintiff was not resisting or causing a disturbance. She was handcuffed and compliant at the time she was brutally beaten. Nevertheless, Defendant Dionne assisted Defendant Turner with throwing Plaintiff to the ground and holding her down while Defendant Turner rammed his knee into her neck and back, breaking

Plaintiff's back and inflicting severe, permanent injuries. Defendant Dionne can provide no evidence to the contrary.

Third, the extent of the resulting injury is so serious that only death could be worse. That is, Plaintiff has suffered permanent quadriplegia as a result of the unjustified, malicious, and sadistic force used by Defendant Dionne. To be sure, Plaintiff's injuries are beyond dispute.

The fourth *Whitley* factor weighs in favor of finding a constitutional violation as there is exists no evidence which would suggest Defendant Dionne reasonably perceived that Plaintiff was a threat to staff or other inmates. Plaintiff had declared a medical emergency as a result of her inability to work because of bad hip as well as a physiological emergency from the stress caused by Defendant Dionne's savage aggression. Plaintiff was handcuffed and compliant throughout the entire incident. But that did not matter to Defendant Dionne; he wanted to "take care" of Plaintiff by "beating her stupid" because she was unable to clean a toilet. Moreover, Defendant Dionne invoked his Fifth Amendment privilege when asked whether Plaintiff posed a threat to staff or inmates. *See* ECF No. 80-23 at 13:14-18. Thus, Plaintiff should be entitled to an adverse inference to the fact that Plaintiff's posed no threat or fear of harm to staff or inmates.

Lastly, as to the fifth factor, the only way Defendant Dionne tempered the severity of his conduct is that, but for the grace of God, Plaintiff did not die as a

result of Defendant Dionne's malicious and sadistic conduct. After nearly beating Plaintiff to death, the key figures—Defendants Turner and Dionne—continued to drag Plaintiff's seemingly lifeless body across the prison yard, allowing her head to bobble along the ground like a rag doll while her were eye rolled back into her head. To be sure, Plaintiff suffered severe and gruesome injuries—*i.e.*, a broken back and neck—from the blows inflicted by Defendant Dionne, resulting in Plaintiff suffering from permanent quadriplegia. Although Plaintiff continues to live, her quality of life is minimal. Sparing Plaintiff's death cannot be considered to have tempered the severity of wholly unnecessary and unjustified force used by Defendant Dionne.

Thus, based on the undisputed material facts, Defendant Dionne applied force maliciously and sadistically for the sole purpose of causing harm to Plaintiff, thereby establishing a constitutional violation and entitling Plaintiff to summary judgment.

### C. This Court Should Draw Adverse Inferences Against Defendant Dionne From His Fifth Amendment Assertions

In a civil suit, the court may draw adverse inferences against a party that invokes the Fifth Amendment. *FTC v. Life Mgmt. Servs.*, 350 F. Supp. 3d 1246, 1260 n.11 (M.D. Fla. 2018) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir. 2009); *United States v. Two Parcels of Real Prop. Located in Russell Cty.*, 92 F.3d 1123, 1129 (11th Cir. 1996). "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter*

*v. Palmigiano*, 425 U.S. 308, 318 (1976). "Th[is] rule allowing invocation of the privilege [by civil litigants], though at the risk of suffering an adverse inference or even a default, accommodates the right not to bear witness against oneself while still ting civil litigation to proceed." *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1310 (11th Cir. 2014) (citing *Mitchell v. United States*, 526 U.S. 314, 328 (1999)). "Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994).

However, "[t]he negative inference . . . to be drawn from the assertion of the Fifth Amendment does not substitute for evidence needed to meet the burden of production." *Avirgan v. Hul*, 932 F.2d 1572, 1580 (11th Cir. 1991). In other words, "the adverse inference is insufficient by itself to allow summary judgment to be entered against a party. A party seeking summary judgment must establish independently the elements of the claim within the confines of Federal Rule of Civil Procedure 56." *SEC v. Simmons*, No. 8:04-CV-2477-T-17MAP, 2008 U.S. Dist. LEXIS 124078, at *45-46 (M.D. Fla. Apr. 25, 2008). "It is the production of additional evidence above and beyond any negative inference to which Judge Johnson referred when he stated that the adverse inference may not be used to cause the 'automatic entry of summary judgment.'" *Id.* (citing *United States v. Premises*

*Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991)); *see also Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944, 947 (11th Cir. 1990).

Thus, when a party seeking summary judgment establishes independently the elements of the claim, the Court is permitted to, and should, draw adverse inferences based on Defendant's decision not to answer questions put to him at his deposition. *See Simmons*, 2008 U.S. Dist. LEXIS 124078, at *46; *see also Life Mgmt. Servs.*, 350 F. Supp. 3d at 1260 n.11 (stating "[t]here is ample evidence aside from [the Defendant's] silence to support summary judgment in favor of Plaintiffs—[the Defendant's] invocation of his Fifth Amendment right is cited as additional supporting evidence."); *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1316, 1320 (S.D. Fla. 2018) (granting summary judgment to the plaintiff notwithstanding the court's agreement with the defendant that, "apart from the adverse inference it is required to draw against him, the information Plaintiff learned about possible sources of the leak would not be sufficient to meet its burden. But, all of these facts taken together permit the Court to find that there are no disputed facts as to all elements . . . .").

Here, Defendant Dionne has asserted the Fifth Amendment to all substantive questions that go to the heart of Plaintiff's claims. *See supra* pp. 6-8; *see also* ECF Nos. 80-22, -23. Defendant Dionne has failed to participate in written discovery, invoking the Fifth Amendment in response to **all** substantive interrogatories. *See*

ECF No. 80-22. Even more detrimental is that, when asked whether his prior statements concerning the incident on August 21, 2019, were accurate and truthful, Defendant Dionne invoked the Fifth Amendment and remained silent. *See, e.g.*, ECF No. 80-23 at 47:14-19. When was asked whether the other FDC employee statements were false or accurate, Defendant Dionne invoked the Fifth Amendment and remained silent. *See id.* at 42:8-17, 43:21–44:6, 50:5-11, 52:9-12, 54:15-25, 55:20-25, 58:4-9, 60:20–61:1, 61:21-25, 63:4-14, 64:18-24, 65:23–66:10, 66:17–67:15. Moreover, when asked whether the inmate statements cited herein were an accurate summary of the interactions between Defendant Dionne and Plaintiff on August 21, 2019, Defendant Dionne again invoked the Fifth Amendment and remained silent. *See id.* at 24:4-7, 29:20-23, 32:4-9, 38:16-19, 59:20-25.

To be clear, Defendant Dionne's invocation of the Fifth Amendment provides additional supporting evidence to the already sufficient, independent evidence establishing Defendant Dionne's constitutional violation. Indeed, "[t]he Eleventh Circuit has described the permissible response in cases such as that of the Defendant's invocation of his Fifth Amendment right, at his deposition and in response to discovery requests in the above-styled cause, as permitting the inference 'that the answers to the questions would not have been favorable to the [individual] asserting the privilege.'" *Hamilton Grp. Funding, Inc.*, 311 F. Supp. 3d at 1316 (citing *Two Parcels of Real Prop. Located in Russell Cty.*, 92 F.3d at 1129). Thus,

under the circumstances, this Court must permit an adverse inference against Defendant Dionne based on his refusal to testify in response to the probative evidence offered against him. After all, "[t]he principle that the invocation of the privilege may not be too 'costly' does not mean that it must be 'costless.'" *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994).

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion and enter summary judgment in favor of Plaintiff and against Defendant Dionne for applying excessive force to cause harm to Plaintiff, in violation of the Eighth Amendment.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN: 0104703)
ryan@andrewslaw.com

*/s/ John M. Vernaglia*
JOHN M. VERNAGLIA (FBN: 1010637)
john@andrewslaw.com
STEVEN R. ANDREWS (FBN: 0263680)
steve@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by electronic service on this 11th day of February, 2020, to:

Thomas Gonzalez, Esq.
Nathan Paulich, Esq.
Gray Robinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Thomas.gonzalez@gray-robinson.com
Nathan.paulich@gray-robinson.com
Sherry.Knox@gray-robinson.com
Laura.Stillwell@gray-robinson.com
Karen.Harris@gray-robinson.com
*Counsel for Defendant FDC*

Thomas R. Thompson, Esq.
Mallory R. Bennett, Esq.
Thompson, Crawford & Smiley
1330 Thomasville Road
Tallahassee, FL 32303
tom@tcslawfirm.net
mallory@tcslawfirm.net
rebecca@tcslawfirm.net
karen@tcslawfirm.net
*Counsel for Defendant R. Dionne*

Robert B. Buchanan, Esq.
Siboni & Buchanan, PLLC
1900 SE 18th Avenue, Suite 300
Ocala, Florida 34471
rbuchanan@sbtrial.com
aperry@sbtrial.com
*Counsel for Defendant K. Turner*

*/s/ John M. Vernaglia*
JOHN M. VERNAGLIA