**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

CHERYL WEIMAR,

    Plaintiff,

v.                                                  CASE NO.: 5:19-cv-548-CEM-PRL

THE FLORIDA DEPARTMENT OF
CORRECTIONS, KEITH TURNER,
and RYAN DIONNE,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND INCORPORATED MEMORANDUM OF LAW

    Plaintiff, Cheryl Weimar, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56(a), hereby files this Motion for Partial Summary Judgment, moving this honorable Court for the entry of an Order granting judgment as to the issue of whether Plaintiff is a qualified individual with a disability for purposes of her claims against Defendant Florida Department of Corrections ("FDC") for violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The record indisputably demonstrates that Plaintiff continuously suffered from major depressive disorder throughout her incarceration at the Florida Department of Corrections. Accordingly, Plaintiff is entitled to summary judgment as to the disability element of her ADA and RA claims against Defendant FDC.

**I.     INTRODUCTION**

This is a civil rights action for damages. Plaintiff has sued Defendants for deliberately depriving her of her rights under the United States Constitution. Specifically, Plaintiff asserts claims against Defendants Turner and Dionne for intentionally using excessive force in violation of the Eighth Amendment to the United States Constitution (Count I) and Defendant FDC for discrimination on the basis of disability in violation of the Title II of the Americans with Disabilities Act ("ADA") (Count II) and Section 504 of the Rehabilitation Act ("RA") (Count III).

Plaintiff has been incarcerated in the custody of FDC since January 2016. She has a history of physical, mental, and intellectual disabilities. But in particular, Plaintiff has a history of major depressive disorder ("MDD"), and was diagnosed with same by FDC staff at or around the time of her initial health screening in 2016. Throughout her incarceration, Plaintiff was regularly prescribed medications for her MDD and routinely seen and monitored by FDC's mental health staff.

In order to recover compensatory damages in connection with her ADA/RA claims, Plaintiff must establish she is a qualified individual with a disability. Because Plaintiff is an inmate who indisputably suffered from MDD throughout her incarceration, Plaintiff is entitled to summary judgment as to the disability element of her ADA and RA claims.

## II.   STATEMENT OF UNDISPUTED, MATERIAL FACTS

Plaintiff is an inmate incarcerated in Defendant FDC's prison system, and has been incarcerated in FDC custody, continuously and without any interruption, since January 21, 2016. *See* ECF No. 46, at ¶¶ 6, 10, 11. When Plaintiff entered FDC's custody, she underwent an initial healthcare screening and was subsequently diagnosed with major depressive disorder ("MDD") by FDC staff. *See* ECF No. 80-1, at FDC 013. Plaintiff was regularly prescribed medications for her MDD, and she was routinely monitored by FDC's mental health staff at every facility she was housed, including Lowell Correctional Institution ("Lowell CI"). *See, e.g.*, ECF Nos. 80-5 at FDC 0462 to 80-6 at FDC 0610; ECF Nos. 80-8 at FDC 0799 to 80-10 at FDC 0958. Indeed, Plaintiff's diagnosis with and recorded history of MDD is well-documented within her FDC medical records. *See, e.g.*, *id.*; *see also* ECF No. 80-1 at FDC 013.

## III.   LEGAL STANDARD

Summary judgment is appropriate and should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party; however, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson*, 477 U.S. at 248).

A movant's "burden under Rule 56 of 'showing' there are no genuine issues of material fact does not mandate citing record evidence at every turn." *Humphreys v. General Motors Corp.*, 839 F. Supp. 822, 825 (N.D. Fla. 1992). Conversely, in opposing summary judgment, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Unum Life Ins. Co. of Am. v. Sisk*, No. 4:12cv62-RH/CAS, 2012 U.S. Dist. LEXIS 184554, at *4 (N.D. Fla. Dec. 6, 2012) (quoting *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)).

"The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient

4

to defeat summary judgment." *United States v. Neely*, No. 3:07cv217/MCR/EMT, 2008 U.S. Dist. LEXIS 115307, at *8 (N.D. Fla. Sep. 29, 2008) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210. 1217 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1544-5 & n.5 (11th Cir. 1992)). Thus, "[t]he court is not obliged [] to deny summary judgment for the moving party when the evidence favoring the nonmoving party is 'merely colorable or is not significantly probative.'" *Id.* at *7 (quoting *Anderson*, 477 U.S. at 249-50). Additionally, while "facts must be viewed in the light most favorable to the nonmoving party," such inferences are proper "***only if there is a 'genuine' dispute as to those facts***." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## IV. DISCUSSION

### A. Claims under the ADA and RA, Generally

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1296 (N.D. Fla. 2019) (quoting 42 U.S.C. § 12132).[1] "[A] qualified inmate who is denied the

---

[1] Section 504 of the RA contains virtually identical wording, except that it proscribes discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. "The only relevant difference [from the ADA] is that the RA has a federal funding requirement," however, "[i]t is undisputed that FDC receives federal funds." *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1298 (N.D. Fla. 2017) (citing *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th

5

benefit of medical services by reason of his disability can state a Title II ADA claim." *Id.* at 1297; *see also Garner v. Bryson*, No. 5:16-cv-121, 2018 U.S. Dist. LEXIS 230515, at *9-10 (M.D. Ga. Jan. 11, 2018) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211, 213 (1998); *Bircoll v. Miami–Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007)).

> To prevail upon a claim under Title II of the ADA, a plaintiff must establish:
>
> (1) that [s]he is a ***qualified individual with a disability***; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll*, 480 F.3d at 1083 (emphasis added) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)). "The elements of Title II may be further refined and a Plaintiff can proceed on theories 'of intentional discrimination, disparate treatment, or failure to make reasonable accommodations.'" *Garner*, 2018 U.S. Dist. LEXIS 230515, at *10 (quoting *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009), and citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)).

---

Cir. 2005)). It is also well-settled that "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Id.* at 1298 (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)); *see also Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) ("given the textual similarities between the two statutes, 'the same standards govern' claims under both, and we 'rely on cases construing [Title II and § 504] interchangeably'") (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)). Thus, Plaintiff's ADA and RA claims are properly analyzed using the same standard.

### B. Plaintiff is a Qualified Individual with a Disability

Title II defines a "qualified individual with a disability" as:

> [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). "[A] disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." *Bircoll*, 480 F.3d at 1081 (citing *Yeskey*, 524 U.S. at 211). Moreover, "[t]he words 'eligibility' and 'participation' in the statutory definition of a qualified individual with a disability 'do not connote voluntariness' and do not require voluntariness on the part of an applicant who seeks a benefit from the state." *Id.*

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff only needs to satisfy one of those definitions. *Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 911 (11th Cir. 1996); 28 C.F.R. § 35.108(a)(2)(ii). "The definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(a)(2)(i).

A physical or mental impairment means, in pertinent part, "[a]ny physiological disorder or condition . . . affecting one or more body systems," such as the neurological system, or "[a]ny mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability." 28 C.F.R. § 35.108(b)(1). And major life activities include, *inter alia*, the operation of a major bodily function—namely, brain function. 28 C.F.R. § 35.108(c)(1)(ii). Finally, the term "substantially limits" must be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(d)(1)(i). Indeed, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 28 C.F.R. § 35.108(d)(1)(ii). An impairment only needs to substantially limit one major life activity to be considered a disability. See 28 U.S.C. § 35.108(d)(1)(iii).

In addition to these definitions and guiding principles, ADA regulations further identify certain "types of impairments," which "will, at a minimum, substantially limit the major life activities indicated." 28 C.F.R. § 35.108(d)(2)(iii). Notably, in applying these principles, the Attorney General has concluded that "***major depressive disorder . . . substantially limits brain function***." 28 C.F.R. §

35.108(d)(2)(iii)(K) (emphasis added).[2] In turn, an individual impaired by major depressive disorder will, "in virtually all cases," result in a determination coverage under the "actual disability" prong or the "record of" prong of the ADA analysis. *See* 28 C.F.R. § 35.108(d)(2)(ii).

Here, Plaintiff indisputably suffered from major depressive disorder or MDD throughout her incarceration, which was recurrent from the time she entered FDC custody up to and through the time she was brutally attacked on August 21, 2019, as alleged in the Second Amended Complaint. Based on Plaintiff's impairment with MDD, "the necessary individualized assessment should be particularly simple and straightforward," and thus, "it should easily be concluded" that Plaintiff suffered from an impairment (*i.e.*, MDD) that substantially limited at least one major life activity (*i.e.*, brain function). 28 C.F.R. § 35.108(d)(2)(ii)-(iii); *see also Harvard v. Inch*, 28 Fla. L. Weekly Fed. D 41 (U.S. N.D. Fla. 2019) (citing 28 C.F.R. § 35.108(d)(2)(iii)(K) and concluding that the plaintiff, who had major depressive disorder, alleged an impairment that substantially interferes his brain function, a major life activity). Accordingly, Plaintiff is entitled to summary judgment as to the

---

[2] "Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, *see* 42 U.S.C. § 12134(a), the regulations 'must [be given] legislative and hence controlling weight . . . .'" *Shotz*, 256 F.3d at 1079 n.2.

disability element of her ADA and RA claims since there can be no genuine dispute that Plaintiff suffered from major depressive disorder throughout her incarceration.[3]

## V.     CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff, Cheryl Weimar, respectfully requests that this Court (1) conclude that Plaintiff is a qualified individual with a disability as a result of her diagnosis with and history of major depressive disorder and (2) grant partial summary judgment as to the disability element of Plaintiff's ADA and RA claims against FDC.

[*Signatures on following page*]

---

[3] To be clear, although Plaintiff believes there is ample evidence to establish that she was intentionally discriminated against on the basis of her disabilities, Plaintiff does not move on that element of her ADA and RA claims at this time. That is, there are other issues surrounding the remaining portions of Plaintiff's claims—namely, the issues pertaining to Defendant Turner and Defendant Dionne's blanket assertions of the Fifth Amendment and the resulting adverse inference against FDC, their employer. Nonetheless, there is undisputed evidence that Plaintiff suffered from a disability during her incarceration, thus warranting summary judgment on the disability element of her claims against FDC. In other words, FDC cannot contend in good faith that Plaintiff did not have a disability as a result of her MDD in light of Plaintiff's documented diagnosis with and history of such impairment in her FDC medical records.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

*/s/ John M. Vernaglia*
JOHN M. VERNAGLIA (FBN: 1010637)
john@andrewslaw.com

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN: 0104703)
ryan@andrewslaw.com
STEVEN R. ANDREWS (FBN: 0263680)
steve@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic service on this 12th day of February, 2020, to:

Thomas Gonzalez, Esq.
Nathan Paulich, Esq.
Gray Robinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Thomas.gonzalez@gray-robinson.com
Nathan.paulich@gray-robinson.com
Sherry.Knox@gray-robinson.com
Laura.Stillwell@gray-robinson.com
Karen.Harris@gray-robinson.com
*Counsel for Defendant FDC*

Thomas R. Thompson, Esq.
Mallory R. Bennett, Esq.
Thompson, Crawford & Smiley
1330 Thomasville Road
Tallahassee, FL 32303
tom@tcslawfirm.net
mallory@tcslawfirm.net
rebecca@tcslawfirm.net
karen@tcslawfirm.net
*Counsel for Defendant R. Dionne*

Robert B. Buchanan, Esq.
Siboni & Buchanan, PLLC
1900 SE 18th Avenue, Suite 300
Ocala, Florida 34471
rbuchanan@sbtrial.com
aperry@sbtrial.com
*Counsel for Defendant K. Dionne*

    */s/ John M. Vernaglia*
    JOHN M. VERNAGLIA