UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHERYL WEIMAR,**

    **Plaintiff,**

v.                                            Case No: 5:19-cv-548-Oc-CEMPRL

**FLORIDA DEPARTMENT OF
CORRECTIONS, KEITH TURNER and
RYAN DIONNE,**

    **Defendants.**

## ORDER

In this prisoner civil rights case, Plaintiff Cheryl Weimar has filed a motion to compel Defendant Florida Department of Corrections' ("FDC") discovery responses (Doc. 78), to which FDC has responded (Doc. 89). For the following reasons, Plaintiff's motion is due to be granted in part.

    **I.**     **Background**

The facts as alleged in the complaint are as follows. Plaintiff has been incarcerated in Defendant FDC's prison system since January 21, 2016. (Doc. 35). Plaintiff has a history of a physical disability relating to an injured hip and a history of mental disabilities including bipolar disorder and severe anxiety disorder. (*Id.*). On August 21, 2019, Plaintiff was an inmate at Lowell Correctional Institution ("Lowell") and assigned the prison work duty of cleaning toilets. (*Id.*). Because of her injured hip, Plaintiff could not bend down to clean the toilets. (*Id.*) Plaintiff complained to Defendants Turner and Dionne (who were correctional officers at Lowell) and she requested to be reassigned to another task. (*Id.*). Turner and Dionne denied her request and became angry at her for complaining about her work assignment. (*Id.*).

As further alleged in the complaint, Plaintiff then declared an inmate medical emergency, hoping that she would receive medical attention for her hip pain. (*Id.*). Turner and Dionne became even angrier and Plaintiff declared an inmate psychological emergency. (*Id.*). According to Plaintiff, Turner and Dionne then slammed her to the ground and beat her with blows to her head, neck, and back. (*Id.*). After the attack, Turner and Dionne "dragged Plaintiff like a rag doll across the compound, allowing her head to bounce along the ground along the way." (*Id.*). After dragging her outside the compound, Turner and Dionne continued their attack in an area not covered by any surveillance cameras. (*Id.*).

Plaintiff is now a quadriplegic with no ability to use her arms and legs. (*Id.* ¶ 39). She was hospitalized after the incident with a broken neck and initially had to breathe through a tracheostomy tube and receive food through a PEG tube. (*Id.* ¶ 40). Plaintiff will need around-the-clock medical care for the rest of her life. (*Id.*). Plaintiff alleged that the Turner and Dionne violated her Eighth Amendment right to be free from cruel and unusual punishment (Count I), and FDC violated her rights under the Americans with Disabilities Act (Count II) and the Rehabilitation Act (Count III), both of which prohibit discrimination.

Plaintiff now asks the Court compel Defendant FDC to (1) respond to interrogatory number 4 and disclose the names of the witnesses of the August 21, 2019 incident and specify the knowledge of the employee witnesses; (2) produce surveillance video footage of the August 21, 2019 incident in response to request to produce number 17; (3) produce unredacted incident reports in response to request to produce number 19; (4) produce internal audio recordings in response to request to produce number 22; and (5) produce the 1,500 emails FDC identified as discussing Plaintiff in response to request to produce numbers 31 and 36. (Doc. 78).

**II.     Legal Standard**

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).

The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. March 8, 2016) (quoting Fed. R. Evid. 401).

Proportionality requires counsel and the Court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the Court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

In order to frame the discovery on this issue, it is essential to determine what the purpose of the discovery is. As the commentary to Rule 26 explains: "A party claiming that a request is

important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26. Then, of course, it is the "Court's responsibility, using all the information provided by the parties, . . . to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

### III. Discussion

At issue are discovery requests involving the names and knowledge of witnesses, surveillance video footage, unredacted incident reports, internal audio recordings, and 1,500 emails discussing Plaintiff. Plaintiff claims that FDC's failure to respond properly to discovery has prejudiced her in selecting witnesses to depose and in obtaining other facts that may be supportive to her claims. FDC raises many objections to Plaintiff's requests, including that some records are protected because they are part of an active investigation by the Florida Department of Law Enforcement ("FDLE"). (Doc. 89). The Court will discuss each specific discovery dispute in turn.

1. Plaintiff's Interrogatory Number 4

Plaintiff requested FDC to "identify all Persons who have knowledge concerning the injuries sustained by Cheryl Weimar on August 21, 2019, and a full and complete description of their knowledge of the August 21, 2019 events concerning Cheryl Weimar." (Doc. 78, p. 3). FDC first responded by listing twenty-two individuals, including Plaintiff, Turner, and Dionne, as well as sixteen employees or contractors, and stated that they all "may have knowledge of the allegations contained in the Complaint." (Doc. 78-2). FDC did not interview or question the witnesses in its response.

Shortly after, FDC produced redacted incident reports with the employees' details about the incident. (Doc. 78-7). Yet FDC did not provide information on whether they knew of any

inmates that witnessed the incident. Later, FDC notified Plaintiff that it would interview no employees or contractors identified in the interrogatory response because of the ongoing investigation by FDLE. (Doc. 78, p. 4). Plaintiff contends that this will give FDC an improper advantage by not having to disclose relevant witnesses.

A party has a duty "to make a reasonable search of its business records and make a reasonable inquiry of its employee and agents in order to obtain the information asked in Plaintiff's interrogatories." *Graddy v. City of Tampa*, No. 8:12-CV-1882-T-24EAJ, 2013 WL 12167553, at *2 (M.D. Fla. Aug. 20, 2013). FDC has met this obligation by providing Plaintiff with the names of those individuals it believes have information and incident reports containing information responsive to Plaintiff's request. Requiring FDC to interview each employee, contractor, and inmate it believes knows about the incident, however, is not required. Whether FDLE is interviewing these witnesses for a criminal investigation is irrelevant, as the issue is whether FDC has a duty to do so at this stage in the litigation. It does not.

FDC made a "reasonable search" of its records and conducted a "reasonable inquiry" of its employees. It then provided Plaintiff with the names of individuals it believed had information, as well as responsive incident reports. Plaintiff obtained several declarations from inmates about the incident (see doc. 78-3), but for purposes of discovery FDC isn't required to seek out and interview inmates for Plaintiff. In other words, FDC need not conduct interviews for the purpose of creating the lists Plaintiff seeks or the details of what those witnesses might know. If FDC has that information it may well be required to disclose it, but it's not under an independent obligation to create it for Plaintiff. Accordingly, Plaintiff's motion to compel is denied with respect to requiring FDC to interview its employees, contractors, and inmates.[1]

---

[1] Plaintiff's request for the Court to delineate what the witnesses identified by FDC might or

2. <u>Plaintiff's Request to Produce Number 17</u>

Plaintiff requested "all videos, including fixed wing video and handheld video, from Lowell CI, Lowell Work Camp, and Lowell Annex, from 12:01am on August 21, 2019, through 11:59pm, August 21, 2019, which shows or depicts Cheryl Weimer." Defendant objections included security concerns, because the videos are part of an active investigation, and overbreadth, undue burden, and relevance. Plaintiff later agreed to limit the request to 8am to 12pm on August 21, 2019 and Defendant still objected to producing video footage. This footage would certainly be relevant to Plaintiff's claims and DCF's defenses as it may (or may not) show the incident as Plaintiff alleges it.

The parties have entered into a confidentiality agreement to protect the security of any documents or information obtained through discovery. (Doc. 78-6). That said, FDC still objects to producing video footage on confidentiality grounds, although it concedes that "video that shows the layout and structural elements of a secure FDC facility would indeed be encompassed by the confidentiality agreement." (Doc. 89, p. 6). It is unclear if FDC is trying to argue that because the video is protected by the agreement signed by both parties, it should not have to produce the footage. If so, this argument fails. The parties have signed a confidentiality agreement that specifies the uses of certain confidential documents and information, including for use only in the litigation and to not be disclosed to anyone other than those mentioned in the signed agreement.

FDC also claims that the video is privileged because it is part of an active investigation. (Doc. 89). Under federal common law, there is a qualified privilege that protects disclosure of information in criminal investigations. *See Coughlin v. Lee*, 946 F.2d 1152, 1159-60 (5th Cir.

---

might not testify to at trial is denied as premature. The issue at this stage is what FDC's discovery obligations are and those obligations don't include interview witnesses.

1991). This determination is made by balancing the interests of the plaintiff against the government's interest in nondisclosure. Factors the Court may consider include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Sirmans v. City of S. Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980) (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

The parties' confidentiality agreement protects the government from any potential risks if the footage is disclosed to Plaintiff. Further, Plaintiff's interest in obtaining the footage of her alleged denial of a reasonable request for accommodation and subsequent attack by correctional officers while she was an inmate in FDC's facility heavily outweighs the government's interest in nondisclosure.

Federal courts may also consider state policies on a privilege claim in assessing the government's interest in maintaining confidentiality. *Coughlin v. Lee,* 946 F.2d 1152, 1159-60 (5th Cir. 1991) (rejecting the contention that state public records law governs a claim of privilege but stating that the court would "consider state policies supporting a privilege in weighing the government's interest in confidentiality"). Florida Statute § 119.071(2)(c)(1) states that active

criminal investigative information is exempt from disclosure as a public record. This statute is used to "prevent the premature *public* disclosure of criminal investigative information because disclosure could impede an ongoing investigation." *See City of Riviera Beach v. Barfield,* 642 So.2d 1135, 1137 (Fla. 4th DCA 1994).

Even so, Plaintiff does not seek to obtain this information under Florida's public records laws, rather, she seeks it in the regular course of discovery as a party in this case. *Reiser v. Wachovia Corp.*, No. 6:06-CV-795-ORL19KRS, 2007 WL 1696033, at *2–3 (M.D. Fla. June 12, 2007) (deciding to not apply chapter 119 when a plaintiff served a subpoena on a police department to provide surveillance footage of a bank robbery); *White v. City of Fort Lauderdale*, No. 08-60771-CIV, 2009 WL 1298353, at *5 (S.D. Fla. May 8, 2009) (deciding to not apply chapter 119 when a plaintiff sought discovery from a party opponent pursuant to rules 26 and 33 of the Federal Rules of Civil Procedure). Florida courts have also distinguished the acquisition of public documents under chapter 119 with the rights of discovery afforded a litigant by rules of procedure. *See, e.g.*, *B.B. v. Dep't of Children & Family Servs.*, 731 So. 2d 30, 34 (Fla. 4th DCA 1999) (analyzing chapter 119 along with the broad discovery rights provided in dependency proceedings); *Wait v. Fla. Power & Light Co.,* 372 So. 2d 420, 425 (Fla. 1979) (analyzing chapter 119 along with discovery rights from judicially created rules of procedure). Therefore, Plaintiff is entitled to the video footage that she requested and her motion to compel is granted as to this request.

   3.  Plaintiff's Request to Produce Number 19

Plaintiff requested "all force incidents which mention or discuss Cheryl Weimar while she was in FDC custody." FDC initially produced a report only from August 25, 2017 and objected to producing any reports relating to the August 21, 2019 incident on relevance grounds, overbreadth,

undue burden, and proportionality, as well as because the reports are part of an active criminal investigation. Yet FDC later produced the incident reports from August 21, 2019 and redacted out comments of supervisors during their review of the incident reports on August 26, 2019. Plaintiff now requests the unredacted incident reports and Defendant again objects because the redacted portions pertain to the criminal investigation.

As discussed above, the Court must weigh Plaintiff's interests against the government's interest in nondisclosure to determine whether information in a criminal investigation should be disclosed. *See Coughlin*, 946 F.2d at 1159–60. The confidentiality agreement between the parties protects documents that fall within the protections of chapter 119, which FDC claims the redacted sections of the incident reports do. (Doc. 78-6). Much like the video footage, Plaintiff's interest in obtaining the portions of the incident report with comments of FDC supervisors heavily outweighs the government's interest in nondisclosure. Therefore, Plaintiff is entitled to the unredacted incident reports from August 21, 2019 and her motion to compel is granted as to this request.

4. Plaintiff's Request to Product Number 22

Plaintiff requested "all FDC internal audio recordings on August 21, 2019, concerning use of force on Cheryl Weimar." Defendant originally objected because the records were part of an active investigation, but in the response to Plaintiff's motion to compel FDC now contends that there are no audio recordings except for any audio associated with the video of the August 21, 2019 incident. (Doc. 89, p. 8-9). Since the Court has already addressed Plaintiff's request to produce video recordings, there is no need to consider this request again. Plaintiff's motion to compel will be granted as to the requests for both video and audio of the incident.

5. Plaintiff's Request to Produce Numbers 31 and 36

Plaintiff requested "all communications between FDC employees concerning Cheryl Weimar from August 20, 2019, through the present date" and "all communications between FDC employees which do not include FDC attorneys, concerning Cheryl Weimar, from August 20, 2019, through the present date." Plaintiff asserts that the communications through the present date will help her case because she has since developed bedsores from being confined to a hospital bed because of the injuries she sustained from the incident. FDC objected to this request because of "overbreadth, undue burden, and proportionality." FDC claims that since it is the "third largest state prison in the United States and has more than 24,000 full-time employees. . . [t]here is no indication that the request[ed] communications would be relevant." (Doc. 78, p. 13). However, Plaintiff only requests communications mentioning her from the day before her alleged attack through the date of the request. The communications would be inclusive of discussions about Plaintiff's medical care, transfers, and may even identify witnesses who have yet to be identified by FDC. Although FDC asserts that it has already produced communications between FDC and Centurion (FDC's medical provider), it is likely that FDC's employees have also discussed Plaintiff's medical care in the emails Plaintiff seeks, including discussion of her bedsores, among other medical conditions or issues.

Initially, FDC did not search its communications to determine how many emails there may be that concern Plaintiff. Since the initial requests for production, FDC has searched for emails containing Plaintiff's name and has determined that 1,500 emails are responsive. (Doc 78, p. 16). Now, FDC claims that many of these emails are likely to be privileged between various counsel and the only way to determine this would be to review each of the 1,500 emails. (Doc. 89, p. 9-10). FDC claims that the "minimal marginal benefit from reviewing all of the 1,500 emails captured in the search is not justified by the effort it would require to perform that review." (Doc.

89, p. 10). As FDC stated in its response, it has produced "almost 10,000 pages of documents to the Plaintiff." (Doc. 89, p. 5). Surely FDC also had to review each of those documents to determine whether the information was privileged. The emails that mention Plaintiff are relevant to the claims and defenses of this action and it would not place an undue burden on FDC to review the emails to determine which are privileged and which are discoverable by Plaintiff. Accordingly, Plaintiff's motion to compel will be granted as to the 1,500 emails that mention Plaintiff.

### IV.    Conclusion.

For the reasons stated above, Plaintiff's motion to compel (Doc. 78) is GRANTED to the extent that Defendant shall provide complete responses to Plaintiff's requests for production numbers 17, 19, 22, 31, and 36, but is otherwise DENIED. Defendant shall provide complete responses to the discovery requests identified above on or before April 8, 2020.

**DONE** and **ORDERED** in Ocala, Florida on March 25, 2020.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties