# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**CHERYL WEIMAR,**

    **Plaintiff,**

**v.**                                                  **CASE NO.: 5:19-cv-548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF**
**CORRECTIONS, KEITH TURNER,**
**and RYAN DIONNE,**

    **Defendants.**
_____/

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff, Cheryl Weimar, by and through the undersigned counsel, and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Rule 3.01 of the Local Rules of the Middle District of Florida, hereby moves for a protective order forbidding Defendants from taking the deposition of non-parties Darlene Monk and Karl Weimar, showing that such witnesses have no personal knowledge that is or could be relevant to the claims and/or defenses at-issue in this action as framed by the Parties at this point, that any discovery (including by way of deposition) inquiring into such individuals' knowledge is not reasonably calculated to lead to the discovery of admissible evidence concerning the claims and/or defenses at-issue in this action, and accordingly, that any such discovery is sought solely for purposes

of harassment, oppression, undue burden, and/or unnecessary delay or expense, as follows:

## I. INTRODUCTION

This is a civil rights action for damages. Plaintiff has sued Defendants for deliberately depriving her of her rights under the United States Constitution. Specifically, Plaintiff asserts claims against Defendants Turner and Dionne for intentionally using excessive force in violation of the Eighth Amendment to the United States Constitution (Count I) and Defendant FDC for discrimination on the basis of disability in violation of the Title II of the Americans with Disabilities Act ("ADA") (Count II) and Section 504 of the Rehabilitation Act ("RA") (Count III).

Plaintiff has been incarcerated in the custody of FDC since January 2016. She has a history of physical, mental, and intellectual disabilities. But in particular, Plaintiff has a history of major depressive disorder ("MDD"), and was diagnosed with same by FDC staff at or around the time of her initial health screening in 2016. Throughout her incarceration, Plaintiff was regularly prescribed medications for her MDD and routinely seen and monitored by FDC's mental health staff.

In order to recover compensatory damages in connection with her ADA/RA claims, Plaintiff must establish she is a qualified individual with a disability, who was excluded from participation in, denied the benefits of, or otherwise subject to

discrimination, by reason of her disability.[1] Partial summary judgment has already been decided and granted by this Court, in Plaintiff's favor, as to the issue of her having a "disability" under the ADA and RA. *See* ECF No. 136.

Defendants now seek to take the deposition of her husband (Karl Weimar), and her religious and spiritual advisor during the time of her incarceration (Darlene Monk).[2] However, it is beyond dispute that (1) Karl Weimar has no personal knowledge of any facts relating to any claim or defense at-issue in this case (*i.e.*, knowledge other than that relating to Plaintiff's disability, which issue has already been conclusively decided and foreclosed by this Court); and (2) Darlene Monk likewise has no personal knowledge of any facts relating specifically to any claim or defense at-issue in this case outside of her disability determination, which Defendant FDC has itself expressly asserted in this action. Accordingly, the depositions of these putative witnesses are unnecessary, improper, and beyond the scope of permissible discovery as contemplated by the Federal Rules of Civil Procedure—not to mention, harassing, oppressive, unduly burdensome, and/or unnecessarily dilatory or

---

[1] *See Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).
[2] Counsel for Defendant FDC has represented to Plaintiff's counsel that FDC will seek and file notices to depose Darlene Monk and Karl Weimar, and to that end has requested that Plaintiff hold open dates of July 7 and July 27, 2020, respectively, for deposition of these putative deponents.

expensive—and thus, a protective order forbidding Defendants from taking these depositions is warranted, just, and proper.[3]

## II. FACTUAL BACKGROUND

Plaintiff is an inmate incarcerated in Defendant FDC's prison system, and has been incarcerated in FDC custody, continuously and without any interruption, since January 21, 2016. *See, e.g.*, ECF No. 46, at ¶¶ 6, 10, 11; ECF No. 80-1 at FDC 03. When Plaintiff entered FDC's custody, she underwent an initial healthcare screening and was subsequently diagnosed with major depressive disorder ("MDD") by FDC staff. *See* ECF No. 80-1, at FDC 013. Plaintiff was regularly prescribed medications for her MDD, and she was routinely monitored by FDC's mental health staff at every facility she was housed, including Lowell Correctional Institution ("Lowell CI"). *See, e.g.*, ECF Nos. 80-5 at FDC 0462 to 80-6 at FDC 0610; ECF Nos. 80-8 at FDC 0799 to 80-10 at FDC 0958. Indeed, Plaintiff's diagnosis with and recorded history of MDD is well-documented within her FDC medical records. *See, e.g.*, *id.*; *see also* ECF No. 80-1 at FDC 013. In addition, and also when Plaintiff entered FDC, she was not a quadriplegic and had full use of her extremities, aside from a bad back and hip, which regularly would cause her to walk with a limp. *See id.* at FDC 03-012; *see also* ECF No. 80-13 at ¶ 4 (Sworn Statement of Jessica Saleman).

---

[3] Plaintiff's counsel has conferred with counsel for Defendant FDC regarding the putative depositions at-issue, and explained the basis for this Motion, to no avail.

– 4 –

On August 21, 2019, Plaintiff was housed at the Lowell Work Camp. *See* ECF No. 80-14 at 7 (Lowell Work Camp Inmate List on August 21, 2019). Plaintiff's work assignment was "houseman," which required her to clean the bathrooms at the Work Camp, among other duties. *See id.*; ECF No. 80-15 at ¶ 3 (Sworn Statement of Cheryl Weimar); *see also* ECF No. 80-13 at ¶ 6. On August 21, 2019, Plaintiff was having hip and back problems and informed FDC staff that she was unable to continue cleaning the bathrooms. ECF No. 80-15 at ¶ 3. FDC staff became confrontational with Plaintiff after she stated that she could not clean the bathrooms, causing Plaintiff to declare a medical emergency. *Id.*; *see also* ECF No. 80-13 at ¶ 7. In response to Plaintiff declaring a medical emergency, Defendant Turner[4] stated to Defendant Ryan Dionne ("Dionne")—"Let's go take care of this"—and the two officers went to the area of the Lowell Work Camp where Plaintiff was reportedly located. ECF No. 80-13 at ¶ 8. Minutes later, Plaintiff declared a psychological emergency. *See* ECF No. 80-13 at ¶ 9. Plaintiff has a known, and well-documented, history of mental disorders, including major depressive disorder, severe anxiety, and bipolar disorder. *See* ECF Nos. 80-1 at FDC 013; 80-8 at FDC 0799-0835; 80-9 at FDC 0836-0928; 80-10 at FDC 0929-0958; *see also* ECF No. 80-16 (Sworn Statement of Joyce Laberta).

---

[4] Defendant Turner was employed as a lieutenant with Defendant FDC on August 21, 2019.

In response to Plaintiff declaring a medical and psychological emergency, Defendant Turner and Defendant Dionne walked Plaintiff out of the A-Dorm at the Work Camp. *See* ECF No. 80-17 at ¶ 3 (Affidavit of Victoria Scifo). Plaintiff was handcuffed from behind. *Id*; *see also* ECF No. 80-18 at ¶ 7 (Affidavit of Brittany Flutie Davis). Plaintiff began stating, "Ow that hurts" and "Please, that hurts." ECF No. 80-17 at ¶ 4. Plaintiff was completely compliant while cuffed, not kicking or acting out. *Id.* at ¶ 4. Defendant Turner threw Plaintiff to the ground and, while Defendant Dionne was holding her down, began kneeing Plaintiff in the neck and back, approximately three times. *Id*. at ¶ 5; *see also* ECF No. 80-19 at ¶ 4 (Affidavit of Amanda Edwards). Plaintiff became soundless and motionless in response. ECF No. 80-17 at ¶ 6. Plaintiff's head hit the ground before her body when Defendant Turner threw her to the ground. *Id*. Plaintiff was believed to be dead. *Id.* The repeated, forceful blows apparently knocked her unconscious. *See* ECF No. 80-19 at ¶ 6. Defendant Turner and Defendant Dionne then dragged the motionless body of Plaintiff to the Work Camp medical building across a big green field and pavilion, allowing her head to bobble like a rag doll with her eyes rolled back into her head. ECF Nos. 80-17 at ¶ 7; 80-13 at ¶ 10; 80-18 at ¶ 2; 80-19 at ¶ 6. Defendant Dionne later stated that he "beat [Plaintiff] stupid" because she couldn't clean a toilet. ECF No. 80-17 at ¶ 12.

As a result of the brutal beating by Defendants Turner and Dionne, Plaintiff suffered a broken back and neck and is now permanently quadriplegic. *See* ECF No. 80-1 at FDC 019.

## III. LEGAL ARGUMENT

### A. *Standard for Protective Order*

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," and information is discoverable as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, "[a] party or any person from whom discovery is sought may move for a protective order . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The Court may limit otherwise reasonable discovery requests where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). "Rule 26(c) gives the district court discretionary power to fashion a protective order." *Farnsworth v. Proctor & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985).

### B. *Deposition of Darlene Monk is Unwarranted and Improper*

Defendants now seek to depose Darlene Monk, the religious and spiritual advisor of Plaintiff during her incarceration, who is notably ***not*** a party to this action. However, it is abundantly clear, and furthermore beyond dispute, that any potential

discovery (including by deposition) from Ms. Monk is **not** relevant to any party's claim or defense in this action, and that information from Ms. Monk is accordingly **not** discoverable because it does not appear (and, in fact, is not) reasonably calculated to lead to the discovery of admissible evidence in this action.[5] *See* Fed. R. Civ. P. 26(b)(1).

Defendant has already admitted as much in this action. In Plaintiff's First Request for Production to Defendant FDC, Plaintiff sought from FDC "[a]ll Documents and Communications which mention or discuss Darlene Monk from January 1, 2018, through the present date." Critically, Defendant FDC responded by objecting to production of such documents and information, on the following basis:

> . . . Defendant objects to request number 52 on the basis of relevance and overbreadth. The request seeks all documents and communications which mention or discuss the Plaintiff's friend, Darlene Monk, for a two year period. ***Ms. Monk is not a possible witness to the events underlying the Plaintiffs allegations and the communications or documents mentioning Ms. Monk can have no bearing on either party's claims or defenses***.[6]

These concessions of Defendant FDC—namely and critically, that Ms. Monk is not a possible witness to the events underlying Plaintiff's allegations as she was not

---

[5] Certainly Ms. Monk knows about Plaintiff's mental health problems and the things in her life that caused or contributed to those disabilities, but again, the Court has already determined that Ms. Weimar had a disability prior to the incident. So, that leaves us with qualified individual and the third element of the ADA claim of which Ms. Monk has no personal knowledge and was not an eyewitness.

[6] A copy of Defendant FDC's Answers to Plaintiff's First Request for Production to Defendant is attached hereto as **Exhibit 1**. *See id.* at p. 18, ¶ 52 (emphasis added).

incarcerated in Lowell Work Camp, and has (and can have) no bearing on either party's claims or defenses—remains true in this litigation. Thus, by Defendant's own admission, discovery (including by deposition) from Ms. Monk is impertinent, unnecessary, and inappropriate, as it relates to claims an defenses at issue in this matter and a protective order forbidding Defendants from taking the deposition of non-party Darlene Monk is in order.

### C. *Deposition of Karl Weimar is Unwarranted and Improper*

Additionally, Defendants now seek to depose Karl Weimar, the husband of Plaintiff, who also is notably *not* a party to this action.[7] However, it is likewise abundantly clear, and furthermore beyond dispute, that any potential discovery (including by deposition) from Mr. Weimar is *not* relevant to any party's claim or defense in this action, and that information from Mr. Weimar is accordingly *not* discoverable because it does not appear (and, in fact, is not) reasonably calculated to lead to the discovery of admissible evidence in this action. *See* Fed. R. Civ. P. 26(b)(1).

To the extent Mr. Weimar ever had any knowledge or information which could even conceivably have been relevant to the claims or defenses, or reasonably calculated to lead to the discovery of admissible evidence, in this action, any such

---

[7] While Karl Weimar was originally a party to this case, and thus listed in Plaintiff's Rule 26 disclosures, he is no longer a party and is neither raising any claims or seeking any damages against Defendants in, or in connection with, this action.

knowledge or information is plainly no longer relevant in light of the Court's grant of partial summary judgment to Plaintiff on the issue of her having a disability. *See* ECF No. 136. Indeed, Mr. Weimar is not a witness to any relevant facts, as the ***only*** knowledge or information Mr. Weimar may possess relating in any way to this action would regard Plaintiff's disability, however, that is no longer at-issue in this case. Mr. Weimar necessarily would have no information as to whether Plaintiff was a "qualified individual," whether Plaintiff was excluded from participation in or denied the benefits of Defendant FDC's services, programs, or activities, or was otherwise discriminated against by FDC, and/or whether Plaintiff's exclusion, denial of benefit, or discrimination was by reason of the her disability—the remaining issues in this case under Plaintiff's ADA and RA claims.[8] Mr. Weimar was not present on August 21, 2019, indeed, he was not incarcerated at Lowell Work Camp, a women's work camp.

---

[8] In addition, as Rule 26(b)(1) makes clear, "[p]arties may obtain discovery ***regarding any non-privileged matter*** that is relevant to any party's claim or defense," however, any communications between Plaintiff and Mr. Weimar would be protected against disclosure pursuant to spousal/marital privilege. *See United States v. Mendoza*, 574 F.2d 1373, 1379 (5th Cir. 1978) (marital privilege "bars one spouse from testifying adversely to the other [and] . . . from testifying as to the confidential communications of the other") (citing *United States v. Cameron*, 556 F.2d 752, 755 (5th Cir. 1977)). The Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Thus, discovery (including by deposition) from Mr. Weimar is similarly impertinent, unnecessary, and inappropriate, and a protective order forbidding Defendants from taking the deposition of non-party Karl Weimar is in order.

## IV.   CONCLUSION

**WHEREFORE**, for the foregoing reasons, Plaintiff, Cheryl Weimar, respectfully requests that this Court **GRANT** this Motion for Protective Order, and accordingly enter a Protective Order forbidding Defendants from taking the deposition of non-parties Darlene Monk and Karl Weimar.

Dated this 9th day of June, 2020.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN: 0104703)
ryan@andrewslaw.com
STEVEN R. ANDREWS (FBN: 0263680)
steve@andrewslaw.com
JOHN M. VERNAGLIA (FBN: 1010637)
john@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## **LOCAL RULE 3.01(g) CERTIFICATE**

Pursuant to Rule 3.01(g) of the Local Rules of the Middle District of Florida, the undersigned has conferred with counsel for Defendant Florida Department of Corrections via email and phone regarding this Motion, and reports that Defendant Florida Department of Corrections objects to the relief requested herein.

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic service on this 9th day of June, 2020, to:

Thomas Gonzalez, Esq.
Gregory Hearing, Esq.
Gray Robinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Thomas.gonzalez@gray-robinson.com
gregory.hearing@gray-robinson.com
Sherry.Knox@gray-robinson.com
Laura.Stillwell@gray-robinson.com
Karen.Harris@gray-robinson.com
*Counsel for Defendant FDC*

Juan Martinez, Esq.
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
juan.martinez@gray-robinson.com
*Counsel for Defendant FDC*

Thomas R. Thompson, Esq.
Mallory R. Bennett, Esq.
Thompson, Crawford & Smiley
1330 Thomasville Road
Tallahassee, FL 32303
tom@tcslawfirm.net
mallory@tcslawfirm.net
rebecca@tcslawfirm.net
karen@tcslawfirm.net
*Counsel for Defendant R. Dionne*

Robert B. Buchanan, Esq.
Siboni & Buchanan, PLLC
1900 SE 18th Avenue, Suite 300
Ocala, Florida 34471
rbuchanan@sbtrial.com
aperry@sbtrial.com
*Counsel for Defendant K. Turner*

*/s/ Ryan J. Andrews*
RYAN J. ANDREWS