**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**CHERYL WEIMAR**

    **Plaintiffs,**

v.                                                                      **Case No.: 5:19-cv-00548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF**
**CORRECTIONS, KEITH TURNER,**
**and RYAN DIONNE**

    **Defendants.**
_____/

**DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS'**
**OPPOSED MOTION TO STAY**

The Defendant the State of Florida Department of Corrections, ("Department") moves to stay the proceedings in this matter until such a time as the Florida Department of Law Enforcement ("FDLE") completes its investigation into the incident underlying the Plaintiff's second amended complaint and releases its findings. The fact that the FDLE investigation is ongoing has made discovery unnecessarily difficult and burdensome. As a foreseeable consequence, the parties have already asked for a two-month extension to the discovery deadline.[1] On June 15, 2020, the Plaintiff propounded her seventeenth and eighteenth sets of requests for production of documents. The next day, on June 16, 2020, the Plaintiff propounded her nineteenth set of requests for production of documents. To date, the Department has also received eight different sets of interrogatories and nine different sets of requests for admissions

---

[1] The current discovery deadline is August 3, 2020. On June 15, 2020, the Plaintiff's counsel filed a motion for another extension of thirty days to the discovery deadline, asking that the new deadline be September 2, 2020.

from the Plaintiff, and has produced more than 20,000 pages of documents.

In light of the active investigation by the FDLE, the Department has been unable to conduct its own investigation into the incident and has therefore been unable to interview potential inmate witnesses. Additionally, the unavailability of FDLE's investigative report has hindered the securing of experts, many of whom need and/or are accustomed to having such a report to review in making their findings.

The most substantial impact of the ongoing investigation, which has severely unfairly prejudiced the Department in its defense of this matter, has been the denial of the taking of the testimony of the individual defendants. In light of the ongoing FDLE criminal investigation, both individual defendants have asserted their rights and privileges under the Fifth Amendment and declined to answer questions. This has deprived the Department of the most probative evidence at issue in this case: the accounts of the officers involved in the incident.

The FDLE is an independent investigatory agency and has been actively investigating the use of force incident at the center of the Plaintiff's second amended complaint. Regardless of the eventual findings within the FDLE's investigative report, the completion of the investigation and the availability of its report has a strong likelihood of aiding in resolution of the case by encouraging settlement between the parties. The Court should grant this Motion for the above-noted reasons, which are more fully set forth in the memorandum which follows.

## **MEMORANDUM IN SUPPORT**

### I.     Introduction and Background

The Plaintiff brings three claims for relief: one claim against individual Defendants Keith Turner and Ryan Dionne under 42 U.S.C. § 1983 for an alleged violation of the

Plaintiff's rights under the Eighth Amendment; one claim against the Department under Title II of the Americans with Disabilities Act ("ADA"); and one claim against the Department under Section 504 of the Rehabilitation Act ("RA"). The allegations which underlie these claims for relief arise from a single incident that is alleged to have occurred on August 21, 2019, at Lowell Correctional Institution. (Doc. 35 ¶ 18). The Plaintiff alleges that she was physically, mentally, and intellectually disabled and that, because of these disabilities, she was beaten by correctional officers, specifically individual Defendants Turner and Dionne. This incident is under active investigation by the FDLE.

On August 21, 2019, the Plaintiff was housed in the Work Camp at Lowell Correctional Institution in Ocala, Florida. On that date, there was an interaction between her, Dionne, and Turner. The Plaintiff was a "dorm worker" or "houseman" in her dorm at the Lowell Work Camp and alleges she was assigned to clean toilets. (Doc. 35 ¶ 18). The Plaintiff refused to complete the work assignment and the events which followed are disputed. The officers attempted to counsel the Plaintiff about her refusal to work. This counseling was captured on the institution's fixed-wing video, which does not have sound. When this counseling proved unsuccessful, the officers attempted to escort the Plaintiff to the medical office for a pre-confinement physical. (*Id.*).[2] When the officers attempted to escort the Plaintiff to the medical office, the Plaintiff can be seen on video immediately dropping her body weight and refusing to comply with the officers' instructions. The officers were then forced to lift the Plaintiff and carry her out of the dormitory door and towards the medical office.

---

[2] According to Rule 33-601.314, F.A.C., an inmate's refusal to work or participate in mandatory programs can result in discipline of up to sixty days of disciplinary confinement and the loss of ninety days of gain time. Inmates do not have the option to refuse work assignments.

3

Without the testimony of the individual Defendants, the only Department records regarding what followed are the officers' incident reports. During the escort to the medical office, and while outside the view of the cameras, the incident reports reflect that the Plaintiff became combative, and began kicking the officers and thrashing. (*Id.*). When the Plaintiff's thrashing and kicking caused Dionne to lose his grip on the Plaintiff, Turner redirected the Plaintiff to the ground in a facedown prone position so that the officers could regain control of the Plaintiff, after which the officers continued their escort to the medical office. (*Id.*). The Plaintiff has alleged, instead, that she was compliant when the officers threw her to the ground and kneed her in the back of the neck, and that this caused her to suffer a broken neck. (Doc. 35, ¶ 32).

**II.     Standard**

"[A] court must stay a civil proceeding pending resolution of a related criminal prosecution . . . when 'special circumstances so require in the 'interest of justice.' " *Transamerica Life Ins. Co. v. Brickman*, Case No. 6:15-cv-1919-Orl-41TBS, 2017 WL 10023751, at *2 (M.D. Fla. Oct. 17, 2017) (ellipsis in original) (Mendoza, J.) (citing *U.S. v. Lot 5, Fox Grove, Alachua Cty*, 23 F.3d 359, 364 (11th Cir. 1994)). Although "[t]he very fact of a parallel criminal proceeding does not alone constitute 'special circumstances,' . . . district courts are vested with substantial discretion to stay civil proceedings in the face of a parallel criminal action where the interests of justice favor doing so."[3] *Id.*

---

[3] Much caselaw pertaining to stays of civil proceedings during parallel criminal investigations analyzes whether a defendant faces "certain loss" due to the invocation of his Fifth Amendment privilege versus the "mere possibility of disadvantage." "However, strict invocation of the Fifth Amendment privilege is not a necessary condition for granting a stay; the Court *must* grant a stay if such loss is present but *may* grant one even when the loss is not actively present." *Young v. Miami-Dade Cty*, 217 F. Supp. 3d 1353, 1355 (S.D. Fla. 2016).

In the absence of special circumstances mandating a stay, district courts nevertheless maintain broad discretion in deciding whether to stay proceedings. This broad discretion is consistent with a court's inherent power to control its docket and to ensure the fair adjudication of cases. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."). "In assessing whether a stay is appropriate, the Court must weigh competing interests and maintain an even balance." *Young v. Miami-Dade Cty*, 217 F. Supp. 3d 1353, 1355 (S.D. Fla. 2016) (internal quotations omitted). "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Brickman*, 2017 WL 10023751, at *2 (quoting *Landis*, 299 U.S. at 255).

### III.  Argument

#### a.  Turner and Dionne's Invocation of Their Fifth Amendment Privilege

A stay is warranted in this case because the underlying incident and the individual Defendants are the subjects of an active and ongoing criminal investigation by the FDLE, which has made the most crucial evidence for the Department unavailable. Both Turner and Dionne have asserted their Fifth Amendment privilege in response to interrogatories and virtually all questions during depositions. (*See, e.g.*, Docs. 80-20; 80-21; 80-22; 80-23). Particularly in light of the Department's unique status as an entity and a governmental defendant, it would be unjust to require the Department to proceed with litigation. The Department is not an individual with its own independent account of what occurred, but is forced to rely on the accounts of others. Without the accounts of Turner and Dionne, the

Department's defense will be substantially, irreparably, and unfairly prejudiced. This matter should therefore be stayed pending the completion of the FDLE's investigation.

The Plaintiff has brought claims against the Department for violating her rights under the ADA and the RA, which prohibit public entities from discriminating against disabled individuals. To state a claim for discrimination, a plaintiff must generally show:

> (1) That she is a qualified individual with a disability; (2) that she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of a benefit, or discrimination was by reason of the plaintiff's disability.

*Owens v. Sec'y, Fla. Dep't of Corr.*, 602 Fed. App'x. 475, 477 (11th Cir. 2015). The Plaintiff specifically alleges that she was subjected to a use of force by Turner and Dionne "because of her disabilities." (Doc. 35, ¶ 60). The Plaintiff also alleges that her declaration of an "inmate medical emergency," because of an alleged pre-existing hip condition, and her declaration of an "inmate psychological emergency," were requests for a "reasonable accommodation," (Doc. 35, ¶ 64), and that the use of force by Turner and Dionne was retaliation because of those requests.

There is no dispute that force was used against the Plaintiff. The key element of the Plaintiff's claims against the Department is <u>why</u> such force was used. The Plaintiff has brought claims against the Department based on the ADA and the RA, and she alleges the force was used "because of her disabilities." (Doc. 35, ¶ 60). The claims pertain only to the actions of Turner and Dionne, and the Plaintiff's counsel himself has argued "all three Defendants live or die by the acts of Turner and Dionne." (Doc. 88, p. 14). If reactionary force was properly used against the Plaintiff because she was kicking at correctional officers and thrashing while

she was being escorted to the medical office, (Doc. 78-7, pp. 1-7 (Aug. 21, 2019 Incident Reports)), the Plaintiff's claims of disability discrimination and retaliation fail.[4] In fact, even if force was improperly used against the Plaintiff by Turner and Dionne, the Plaintiff's claims against the Department would still fail if the force was used for reasons other than her disability.

The reasons Turner and Dionne used force against the Plaintiff are an indispensable element of the Department's defenses to the Plaintiff's ADA and RA claims. Ultimately, the only two individuals who can explain why Turner and Dionne used force against the Plaintiff are Turner and Dionne themselves. The Department's unique status as an entity and a governmental defendant deprives it of its own first-hand account of the incident. The testimony of Turner and Dionne will therefore be crucial to the Department's defense, and the Department is nearly completely unable to defend itself from the Plaintiff's allegations without such testimony. The Department lacks the ability to have its own eyewitness account independent of the officers involved in the incident.

In the Southern District of Florida, this exact situation arose in the context of a county correctional facility. *See Young v. Miami-Dade Cty*, 217 F. Supp. 3d 1354 (S.D. Fla. 2016). In *Young*, an inmate brought a lawsuit after an alleged beating by county correctional officers. *Id.* The inmate filed suit against the Miami-Dade Corrections and Rehabilitations Department while the state attorney was investigating the incident to determine whether criminal charges needed to be brought against the officers involved. *Id.* The parties anticipated that the

---

[4] The Department's policies and regulations specifically authorize a correctional officer to use force in such instances to "[d]efend himself, herself, or others against imminent or already occurring unlawful force," and to "[o]vercome an inmate's physical resistance to a lawful command." *See* Rule 33-602.210, Florida Administrative Code.

individual defendants would assert their rights under the Fifth Amendment and decline to answer questions. *Id.*

Judge Altonaga granted a temporary stay in light of the county's inability to mount a proper defense without the evidence that the investigation would provide, finding that, without such a stay, the county would be nearly completely unable to defend itself against the inmate's allegations. *Id.* at 1354-55. This included the "most probative evidence at issue in the case— the eyewitness accounts of the officers and witnesses involved in the disputed incident." *Id.* "That the County might possess a 'wealth' of other evidence does not remove the prejudice to the County if the stay is denied when the most crucial evidence remains inaccessible." *Id.* (citations omitted).

Mindful of the inmate's suggestion that "the unknown status of the criminal investigation might effectively lead to an indefinite stay," Judge Altonaga determined that the "more prudent course is to permit a temporary stay and to require periodic updates on the status of the State Attorney's investigation." *Id.* at 1356. "Both parties, not to mention the Court, stand to benefit from a fuller and more comprehensive case file." *Id.*

Although courts have used their discretion to deny requests for stays that come after the completion of discovery or when it has been ongoing for several months, Judge Altonaga noted that the inmate in *Young* would not be prejudiced by the timing of the county's motion. *Id.* at 1355-56. Judge Altonaga also noted that, even though the inmate cited his poor health in opposing a stay, the inmate "d[id] not indicate how his fragile condition might be more burdened by a stay than by the certain delays resulting from attempts to obtain information from the State Attorney." *Id.* In the case at hand, the Plaintiff's condition was initially unknown

and, in fact, the Plaintiff filed three emergency motions between September and December 2019 related to her injuries. Notably, on December 3, 2019, the Plaintiff filed an emergency motion and alleged that her "life [was] in jeopardy," (Doc. 50, p. 13) and that her "dire condition and injuries require a significant degree of medical care," (*Id.* at p. 2).

Much discovery has been had and the time up to this point has been efficiently used. However, it has now become apparent that the parties cannot effectively proceed without the FDLE investigation. (*See, e.g.*, Doc. 159, Plt's Mot. to Compel). With the discovery deadline still months away, and with the Plaintiff's life care expert forecasting her care plan for the next 32.5 years, the Plaintiff's initially "fragile" medical condition should no longer be an impediment to granting a stay in this case.

In a seminal case on the subject of stays of civil proceedings pending resolution of criminal investigations or proceedings, *Wehling v. City Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979), the circuit court found that denying a party's motion for a protective order that "in effect was asking the court to stay further discovery for approximately three years," was an abuse of discretion. *Id.* at 1089. The circuit court in *Wehling* found that the district court should have "measured the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible. This balancing-of-interests approach ensures that the rights of both parties are taken into consideration before the court decides whose rights predominate." *Id.* at 1088.

Because the stay "would not impose undue hardship on defendant and, therefore, would protect the party exercising a constitutional privilege from *unnecessary* adverse consequences, we believe the court abused its discretion in denying Wehling's Motion for a Protective Order

and dismissing the lawsuit." *Id.* at 1089. (emphasis in original). In *Wehling*, *Young*, and the case at hand, the balance of interests weighs in favor of granting a stay until the FDLE completes its investigation into the incident underlying the Plaintiff's second amended complaint.

### b. The FDLE Investigation

The ongoing investigation has made discovery in this case unnecessarily difficult. The Department has produced over 20,000 pages of documentation in response to the Plaintiff's first twelve sets of requests for production of documents. The Plaintiff has also served seven separate sets of requests for production of documents since May 27, 2020. On June 15, 2020, the Plaintiff served her seventeenth and eighteenth sets of requests for production of documents—two business days after serving her sixteenth set of requests for production, which itself came one day after her fifteenth set of requests for production. On June 16, 2020, the Plaintiff propounded her nineteenth set of requests for production of documents. The sheer number of discovery requests in this case is evidence that the parties would benefit from the availability of a report into the FDLE's independent investigation of the incident underlying the complaint. As part of its investigation the FDLE has, or will, interview potential witnesses to the incident, which may obviate the need for a portion of the twenty-two depositions currently planned by the Plaintiff.

On a separate but related note, when engaging experts in this matter to opine regarding the use of force, a number of the experts requested and were accustomed to being provided with the reports of independent agencies who had already investigated the use of force. Without such a report at this time, the use of force experts have instead relied on questionable inmate

affidavits prepared with the assistance of, and in some instances actually drafted by, the Plaintiff's counsel or investigator. Based on the incompleteness of this record without FDLE's investigative report, the reports from all of the use of force experts have reserved the right to supplement or amend their reports, should additional documents or evidence be provided.

A stay until the resolution of the FDLE's investigation would also be beneficial for two very practical reasons. First, a stay would not prejudice the parties because it would allow the parties to weather any additional hardship that may be caused by COVID-19. The Plaintiff's counsel has already indicated his reluctance to conduct depositions of inmates in person in an institutional setting. Although one deposition of an inmate has been taken via Zoom, the facility may not always have a sufficiently large room with internet that could be used to facilitate Zoom depositions and still maintain social distancing requirements for the attorneys or individuals that do attend the depositions in person. As part of the precautions taken to limit the spread of COVID-19, correctional facilities are limiting inmate movements between different parts of the facilities. If there is no adequate room in, for instance, a Work Camp, the deposition may not be able to go forward.

Secondly, the availability of the report is likely to encourage settlement in this matter. The report from an independent investigative agency into the allegations underlying the Plaintiff's claims against the Department would allow all parties an impartial view of what actually occurred on August 21, 2019.

## **CONCLUSION**

For the above noted reasons, the Department respectfully requests that the Court grant the Department's Motion to stay further proceedings in this matter pending resolution of the

active criminal investigation by the FDLE into the events underlying the Plaintiff's second amended complaint.

### 3.01(g) CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to the requirements of Local Rule 3.01(g), the undersigned certifies that he has conferred with opposing counsel in good faith regarding the substance of this motion and the requested relief is opposed.

    Respectfully submitted,

/s/Juan C. Martinez
Juan C. Martinez
Florida Bar No. 009024
GrayRobinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Juan.martinez@gray-robinson.com
Gregory Hearing
Florida Bar No. 817790
GrayRobinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 273-5000
Facsimile: (813) 273 5145
Gregory.hearing@gray-robinson.com
Attorneys for the Defendant FDC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 16th day of June, 2020, by CM/ECF electronic filing to the Clerk of Court and to the following:

Ryan J. Andrews
John M. Vernaglia
Steven R. Andrews
The Law Offices of Steven R. Andrews, P.A.
822 North Monroe Street
Tallahassee, Florida 32303
ryan@andrewslaw.com
john@andrewslaw.com
steve@andrewslaw.com

Thomas Robert Thompson
Mallory R. Bennett
Thompson, Crawford & Smiley, P.A.
1330 Thomasville Road
Tallahassee, FL  32303
tom@tcslawfirm.net
Mallory@tcslawfirm.net

Robert B. Buchanan
Siboni & Buchanan, PLLC
1900 SE 18th Avenue, Suite 300
Ocala, Florida 34471
rbuchanan@sbtrial.com
aperry@sbtrial.com

/s/ Juan C. Martinez
Attorney