# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**CHERYL WEIMAR,**

    **Plaintiff,**

v.                                    **CASE NO.: 5:19-cv-548-CEM-PRL**

**THE FLORIDA DEPARTMENT OF
CORRECTIONS, KEITH TURNER,
and RYAN DIONNE,**

    **Defendants.**
_____/

## PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT, AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Cheryl Weimar, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56(a), hereby files this Second Motion for Partial Summary Judgment, moving this honorable Court for the entry of an Order granting judgment as to the issue of whether Plaintiff is a "qualified individual" for purposes of her claims against Defendant Florida Department of Corrections ("FDC") for violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").

The record indisputably demonstrates that Plaintiff is a "qualified individual" for purposes of the ADA and RA, in that she was indisputably an individual with a disability[1] who, with or without reasonable modifications to rules, policies, or

---

[1] This Court has already determined that Plaintiff is an individual with a disability, as a matter of law, for purposes of her ADA and RA claims, *see* ECF No. 136 ("Plaintiff's Motion for Summary

practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by FDC—including, without limitation, medical and mental health services, programs, and activities (which Plaintiff was not only entitled, eligible, and qualified to receive, but also had, in fact, received from FDC throughout her incarceration), as well as programs, services, and activities of calm and reasonable communication with responding FDC officers, and not being subject to physical beatings by FDC officers.

Accordingly, Plaintiff is entitled to summary judgment as to the "qualified individual" element of her ADA and RA claims against Defendant FDC.

## I. INTRODUCTION

This is a civil rights action for damages. Plaintiff has sued Defendants for deliberately depriving her of her rights under the United States Constitution. Specifically, Plaintiff asserts claims against Defendants Turner and Dionne for intentionally using excessive force in violation of the Eighth Amendment to the United States Constitution (Count I) and Defendant FDC for discrimination on the

---

Judgment (Doc. 85) is **GRANTED** . . . with regard to Plaintiff's claim of having a disability"), and expressly has not determined or addressed the issue of whether Plaintiff is a "qualified individual" for purposes of her ADA and RA claims, *see id.* ("this Order solely addresses whether Plaintiff has a disability, not whether she was "a qualified individual with a disability").

basis of disability in violation of the Title II of the Americans with Disabilities Act ("ADA") (Count II) and Section 504 of the Rehabilitation Act ("RA") (Count III).

Plaintiff has been incarcerated in the custody of FDC since January 2016. She has a history of physical, mental, and intellectual disabilities, for which she was entitled to (and, in fact, had previously received) services and participation in programs and activities, and for which FDC was required to provide (and did, in fact, had previously provided) Plaintiff with services and allow Plaintiff to participate in programs and activities. In particular, Plaintiff has a history of major depressive disorder ("MDD"), and was diagnosed with same by FDC staff at or around the time of her initial health screening in 2016. Throughout her incarceration, Plaintiff was regularly prescribed medications for her MDD and routinely seen and monitored by FDC's mental health staff.

In order to recover compensatory damages in connection with her ADA/RA claims, Plaintiff must establish she is a "qualified individual" with a disability.[2] Because Plaintiff is an inmate who indisputably suffered from MDD throughout her incarceration—for which Plaintiff was entitled to (and, in fact, had previously received) services and participation in programs and activities, and for which FDC was required to provide (and did, in fact, had previously provided) Plaintiff with services and allow Plaintiff to participate in programs and activities—Plaintiff is

---

[2] As stated above, the Court has already determined that Plaintiff has a disability. *See* note 1, *supra*.

entitled to summary judgment as to the "qualified individual" element of her ADA and RA claims.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS [3]

Plaintiff is an inmate incarcerated in Defendant FDC's prison system, and has been incarcerated in FDC custody, continuously and without any interruption, since January 21, 2016. *See* ECF No. 46, at ¶¶ 6, 10, 11. When Plaintiff entered FDC's custody, she underwent an initial healthcare screening and was subsequently diagnosed with major depressive disorder ("MDD") by FDC staff. *See* ECF No. 80-1, at FDC 013. Throughout her incarceration, Plaintiff was regularly provided medical and mental health services by FDC, and participated in medical and mental health programs and activities provided by FDC, relating to her MDD—including without limitation, being prescribed medications for her MDD, and being routinely monitored by FDC's mental health staff at every facility she was housed, including Lowell Correctional Institution ("Lowell CI"). *See, e.g.*, ECF Nos. 80-5 at FDC 0462 to 80-6 at FDC 0610; ECF Nos. 80-8 at FDC 0799 to 80-10 at FDC 0958. Indeed, Plaintiff's diagnosis with, recorded history of, and eligibility and receipt of programs, services, and activities relating to treatment for, MDD is well-documented within her FDC medical records. *See, e.g.*, *id.*; *see also* ECF No. 80-1 at FDC 013.

---

[3] In addition to the facts set forth herein, Plaintiff also incorporates the Statement of Undisputed Material Facts set forth in her first Motion for Partial Summary Judgment. *See* ECF No. 85.

FDC is obligated by law to provide inmates with, and inmates are entitled, eligible, and qualified to receive, medical and mental health services. Indeed, "[t]he State of Florida is responsible for providing inmates with a constitutional standard of care when they are admitted to the Department's institutions, in accordance with Sections 945.025(2), and 945.6034, F.S. This includes comprehensive medical, mental health and dental services, and all associated ancillary services." *See* Florida Department of Corrections, Office of Health Services, *available at* http://prod.fdc-wpws001.fdc.myflorida.com/org/health.html.

Moreover, FDC has expressly acknowledged and admitted in this litigation that inmates (such as and including Plaintiff) are entitled, eligible, and qualified to receive, and that FDC is required to provide and offer inmates (such as and including Plaintiff), medical and mental health services:

1. *Admit that Ms. Weimar met the essential eligibility requirements for the receipt of medical services on August 21, 2019.*

   **RESPONSE:**

   **Denied as stated. The Defendant admits that the Plaintiff is eligible for medical services in accordance with federal law, state law, and the FDC's Health Services Bulletin ("HSB"), policies, and procedures.**

2. *Admit that Ms. Weimar met the essential eligibility requirements for the receipt of mental health services on August 21, 2019.*

**RESPONSE:**

**Denied as stated. The Defendant admits that the Plaintiff met the requirements for the receipt of mental health services on August 21, 2019, under federal law, state law, and the FDC's HSBs, policies, and procedures.**

3. *Admit that the Department of Corrections is required to provide medical services to incarcerated inmates.*

   **RESPONSE:**

   **Denied as stated. The Defendant admits that the FDC is required to provide medical services to incarcerated inmates in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

4. *Admit that the Department of Corrections is required to provide mental health services to incarcerated inmates.*

   **RESPONSE:**

   **Denied as stated. The Defendant admits that the FDC is required to provide mental health services to incarcerated inmates in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

5. *Admit that the Department of Corrections is required to offer medical services to incarcerated inmates.*

   **RESPONSE:**

   **Denied as stated. The Defendant admits that the FDC is required to offer medical services to incarcerated inmates in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

6. *Admit that the Department of Corrections is required to offer mental health services to incarcerated inmates.*

**RESPONSE:**

**Denied as stated. The Defendant admits that the FDC is required to offer mental health services to incarcerated inmates in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

7. *Admit that Ms. Weimar, as an inmate incarcerated within FDC, is entitled to receive medical services.*

    **RESPONSE:**

    **Denied as stated. The Defendant admits that the Plaintiff is entitled to receive medical services in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

8. *Admit that Ms. Weimar, as an inmate incarcerated within FDC, is entitled to receive mental health services.*

    **RESPONSE:**

    **Denied as stated. The Defendant admits that the Plaintiff, as an inmate incarcerated within the FDC, is entitled to receive mental health services in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures**

9. *Admit that Ms. Weimar, as an inmate incarcerated within FDC, is eligible for receipt of mental health services.*

    **RESPONSE:**

    **Denied as stated. The Defendant admits that the Plaintiff is eligible for receipt of medical services in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

10. *Admit that Ms. Weimar, as an inmate incarcerated with FDC, is eligible for the receipt of mental health services.*

**RESPONSE:**

**Denied as stated. The Defendant admits that the Plaintiff, as an inmate incarcerated with the FDC, is eligible for the receipt of mental health services in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

11. *Admit that Ms. Weimar, as an inmate incarcerated within FDC, was qualified for the receipt of medical services on August 21, 2019.*

    **RESPONSE:**

    **Denied as stated. The Defendant admits that the Plaintiff was qualified for the receipt of medical services in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures on August 21, 2019.**

12. *Admit that Ms. Weimar, as an inmate incarcerated within FDC, was qualified for the receipt of mental health services on August 21, 2019.*

    **RESPONSE:**

    **Denied as stated. The Defendant admits that the Plaintiff, as an inmate incarcerated within the FDC, was qualified for the receipt of mental health services on August 21, 2019, in accordance with federal law, state law, and the FDC's HSBs, policies, and procedures.**

*See* Defendant Florida Department of Corrections' Answers to Plaintiff's Seventh Request for Admissions, submitted herewith as **Exhibit 1**.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate and should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party; however, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson*, 477 U.S. at 248).

A movant's "burden under Rule 56 of 'showing' there are no genuine issues of material fact does not mandate citing record evidence at every turn." *Humphreys v. General Motors Corp.*, 839 F. Supp. 822, 825 (N.D. Fla. 1992). Conversely, in opposing summary judgment, "Rule 56(e) . . . requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Unum Life Ins. Co. of Am. v. Sisk*, No. 4:12cv62-RH/CAS, 2012 U.S. Dist. LEXIS 184554, at *4 (N.D. Fla. Dec. 6, 2012) (quoting *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)).

"The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment." *United States v. Neely*, No. 3:07cv217-MCR/EMT, 2008 U.S. Dist. LEXIS 115307, at *8 (N.D. Fla. Sep. 29, 2008) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210. 1217 (11th Cir. 2000), and *Sammons v. Taylor*, 967 F.2d 1533, 1544-5 & n.5 (11th Cir. 1992)). Thus, "[t]he court is not obliged [] to deny summary judgment for the moving party when the evidence favoring the nonmoving party is 'merely colorable or is not significantly probative.'" *Id.* at *7 (quoting *Anderson*, 477 U.S. at 249-50). Additionally, while "facts must be viewed in the light most favorable to the nonmoving party," such inferences are proper "***only if there is a 'genuine' dispute as to those facts***." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (emphasis added).

## IV. STANDARD UNDER THE ADA AND RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hoffer III*, at 1296 (quoting 42 U.S.C. § 12132).[4] "[A] qualified inmate who is denied the benefit of medical services by reason of his disability can state a Title II ADA claim." *Id.* at 1297; *see also Garner v. Bryson*, No. 5:16-cv-121, 2018 U.S. Dist. LEXIS 230515, at *9-10 (M.D. Ga. Jan. 11, 2018) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211, 213 (1998); *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007)).

To prevail upon a claim under Title II of the ADA, a plaintiff must establish:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

---

[4] Section 504 of the RA contains virtually identical wording, except that it proscribes discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. "The only relevant difference [from the ADA] is that the RA has a federal funding requirement," however, "[i]t is undisputed that FDC receives federal funds." *Hoffer II*, at 1298 (citing *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005)). It is also well-settled that "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Hoffer II*, at 1298 (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)); *see also Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) ("given the textual similarities between the two statutes, 'the same standards govern' claims under both, and we 'rely on cases construing [Title II and § 504] interchangeably'") (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)). Thus, Plaintiff's ADA and RA claims are properly analyzed using the same standard.

*Bircoll*, 480 F.3d at 1083 (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)). "The elements of Title II may be further refined and a Plaintiff can proceed on theories 'of intentional discrimination, disparate treatment, or failure to make reasonable accommodations.'" *Garner*, 2018 U.S. Dist. LEXIS 230515, at *10 (quoting *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009), and citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)).

## V.     Plaintiff is a "Qualified Individual" Under the ADA and RA

As specifically relevant here, under the ADA (and RA), a "qualified individual with a disability" is defined as:

> An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Simply by virtue of her incarceration, Plaintiff met the essential eligibility requirements for the receipt of medical and mental health services. *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that prison "medical services" are within the scope of Title II of the ADA); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals."); *Morrison v. The Florida Department of*

*Corrections, et al.*, No. 4:18-cv-576-MW/CAS (N.D. Fla. Mar. 2, 2020 (ECF No. 145, Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, a copy of which attached hereto as **Exhibit 2**); *Siskos v. Sec'y, Dep't of Corr.*, No. 4:17-cv-186-RH/GRJ, 2018 U.S. Dist. LEXIS 92565, at *17 (N.D. Fla. May 18, 2018) (quoting *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) (determining that "services, programs, and activities include all government activities")); *Raines v. Florida*, 983 F. Supp. 1362, 1372 (N.D. Fla. 1997) ("It is evident from the reported decisions, however, that to be 'otherwise qualified,' a person need only possess the basic eligibility requirements of the public program in which the individual seeks to participate.") (citing *Tugg v. Towey*, 864 F. Supp. 1201, 1205 (S.D. Fla. 1994)).[5]

When Plaintiff entered FDC's custody, she underwent an initial healthcare screening and was subsequently diagnosed with MDD by FDC staff. *See* ECF No.

---

[5] *See also Moore v. Tanner*, No. 07-cv-10442, 2008 U.S. Dist. LEXIS 63280, at *19 (E.D. Mich. Aug. 4, 2008) ("A person is a 'qualified individual' under the ADA and RA if he or she is qualified to receive the benefits of a public service, program, or activity. *Spencer v. Earley*, 278 Fed. Appx. 254, 2008 U.S. App. LEXIS 10574, 2008 WL 2076429, at *5 (4th Cir. 2008) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 497, 498 (4th Cir. 2005)). This Court will assume for purposes of this decision that plaintiff was a qualified individual because, as an inmate of the Jail, he was a recipient of the services provided to inmates of the Jail."); *Pruitt v. Lewis*, No. 06-cv-2867, 2008 U.S. Dist. LEXIS 947, at *19 (W.D. Tenn. Jan. 7, 2008) ("In the context of a state prison, a 'benefit, program, or service' may include recreational activities, medical services, as well as educational and vocational programs." (citing *Yeskey*, 524 U.S. at 210); *accord Roberts v. Khounphixay*, No. 18-cv-746-MJP, 2020 U.S. Dist. LEXIS 80010, at *2-3 (W.D. Wash. May 6, 2020); *Harrison v. Mackie*, No. 1:16-cv-879, 2017 U.S. Dist. LEXIS 32382, at *15-16 (W.D. Mich. Mar. 7, 2017); *Eagle v. Mich. State Indus.*, No. 2:14-cv-69, 2014 U.S. Dist. LEXIS 124887, at *5 (W.D. Mich. Sep. 8, 2014);

80-1, at FDC 013. Throughout her incarceration, Plaintiff was regularly provided medical and mental health services by FDC, and participated in medical and mental health programs and activities provided by FDC, relating to her MDD—including without limitation, being prescribed medications for her MDD, and being routinely monitored by FDC's mental health staff at every facility she was housed, including Lowell CI. *See, e.g.*, ECF Nos. 80-5 at FDC 0462 to 80-6 at FDC 0610; ECF Nos. 80-8 at FDC 0799 to 80-10 at FDC 0958. Indeed, Plaintiff's diagnosis with, recorded history of, and eligibility and receipt of programs, services, and activities relating to treatment for, MDD is well-documented within her FDC medical records. *See, e.g.*, *id.*; *see also* ECF No. 80-1 at FDC 013. In addition, Defendant FDC has readily admitted (as it must) that Plaintiff was entitled to, and eligible and qualified for, receipt of medical and mental health services and participation in medical and mental health programs and activities. *See* Exhibit 1.

Accordingly, there can no reasonable dispute that Plaintiff was a "qualified individual" for purposes of her claims against Defendant FDC under the ADA and RA, and summary judgment on this issue is warranted and proper.

## VI. CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that the Court grant partial summary judgment in favor of Plaintiff and against FDC as to the issue of whether Plaintiff was a "qualified individual" for purposes of her claims against Defendant FDC under the ADA and RA.

Respectfully submitted,

**ANDREWS LAW FIRM**
822 North Monroe Street
Tallahassee, Florida 32303
T: (850) 681-6416 / F: 681-6984

*/s/ David A. Weisz*
DAVID A. WEISZ (FBN: 1023229)
STEVEN R. ANDREWS (FBN: 0263680)
RYAN J. ANDREWS (FBN: 0104703)
JOHN M. VERNAGLIA (FBN: 1010637)
steve@andrewslaw.com
ryan@andrewslaw.com
david@andrewslaw.com
john@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of July, 2020, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

>*/s/ David A. Weisz*
>DAVID A. WEISZ